[BILL OF EXCHANGE AND PROMISSORY NOTE. SALE WITH WARRANTY.]

## THORNTON, Plaintiff in Error, *against* WYNN, Defendant in Error.

An unconditional promise, by the endorser of a bill or note, to pay it, or the acknowledgment of his liability, after knowledge of his discharge from his responsibility by the laches of the holder, amounted to an implied waiver of due notice of a demand from the drawee, acceptor, or maker.

Upon a sale with a warranty of soundness, or where, by the special terms of the contract, the vendee is at liberty to return the article sold, an offer to return it is equivalent to an offer accepted by the vendor, and the contract being thereby rescinded, it is a defence, to an action for the purchase money, brought by the vendor, and will entitle the vendee to recover it back if it has been paid.

So, if the sale is absolute, and the vendor afterwards consent unconditionally to take back the article, the consequences are the same.

But if the sale be absolute, and there be no subsequent consent to take back the article, the contract remains open, and the vendee must resort to his action upon the warranty, unless it be proved that the vendor knew of the unsoundness of the article, and the vendee tendered a return of it within a reasonable time.

*a* See 1 *Paine's Rep.* 305. S. C.

1827.

Thornton
v.
Wynn.

Jan. 31st.

This cause was argued by Mr. *C. C. Lee* for the plaintiff in error,[a] and by Mr. *Worthington* for the defendant in error.[b]

Mr. Justice WASHINGTON delivered the opinion of the Court.

This was an action brought by the defendant in error against the plaintiff in error, in the Circuit Court for the District of Columbia and county of Washington, upon a promissory note given by one Miller to Thornton, and by him endorsed to Wynn. The declaration contains a count upon the note, and also the common counts for money laid out and expended, and for money had and received.

At the trial of the cause upon the general issue, the defendant below took two exceptions to the opinion of the Court, which are to the following effect. The first states, that the plaintiff gave in evidence the note and endorsement mentioned in the declaration, and in order to dispense with the proof of the ordinary steps of diligence in presenting and demanding the note of the drawer, and giving notice to the endorser, the plaintiff offered evidence to prove, that, a few weeks before the institution of this suit, the note in question was presented to the defendant, who, being informed that Miller, the drawer, had not paid the note, said, " he knew Miller had not, and that Miller was not to pay it ; that it was the concern of the defendant alone, and Miller had nothing to do with it ; that the note had been given for part of the purchase money of a certain race horse called Ratler, and that the defendant offered to take up the said note if the plaintiff's agent would give time, and receive other notes mentioned in payment :" to the admission and competency of which evidence the defendant objected ; but the Court overruled the objection, and

a 2 *H. Bl.* 609. 1 *Moore's Rep. C. P.* 535. 3 *Camp.* 57. 11 *East's Rep.* 114. 4 *Dall.* 109. 4 *Taunt.* 93. 1 *Esp.* 261. 6 *East's Rep.* 110. 1 *H Bl.* 17.

b 1 *Term Rep.* 405. 2 *Term Rep.* 703. 1 *Esp.* 302. 12 *East's Rep.* 171. 4 *Cranch,* 141. 2 *Johns. Rep.* 1. 7 *Mass. Rep.* 449. 5 *Mass. Rep.* 170. 11 *Johns. Rep.* 180. *Peake's N. P. Cas.* 203. 1 *Taunt.* 12. 2 *Term Rep.* 713. 15 *East's Rep.* 275. *Cowp.* 838. *Dougl.* 24. 1 *Term Rep.* 133. 7 *East's Rep.* 274. 2 *Taunt.* 2. 14 *Johns. Rep.* 416. 2 *East's Rep.* 320.

admitted the evidence as competent to support this action, without any further proof of demand upon the drawer or notice to the endorser.

That the said evidence being so admitted by the Court, the defendant offered evidence to prove that the said note was given for part of the purchase money of the said race horse, then celebrated for his performances on the turf, sold by the plaintiff to the defendant, and the said Miller, the drawer of the note, for 3,000 dollars, of which 2,000 dollars had been paid ; that the plaintiff, at the time of so selling this horse, warranted him sound, and declared him capable of beating any horse in the United States, and recommended the purchasers to match him against a celebrated race horse in New-York. called Eclipse ; that he also gave a representation of his pedigree, which he described as unexceptionable, and promised to procure his pedigree and send it to the defendant.   And the defendant then offered evidence to prove that the said horse, at the time of the said sale, was utterly unsound, and broken down, and had been broken down whilst in the plaintiff's possession, and was reputed and proven by persons in the neighbourhood of the plaintiff, who afterwards communicated the same to the purchaser ; and was wholly unfit for, and incapable of, the action and fatigue necessary to a race horse ; and that the plaintiff had wholly failed to procure and furnish the pedigree of the horse as he had agreed, and that a pedigree was an essential term in the purchase of the horse, or ordinarily is so in the purchase of such horses, without which this horse was worth nothing ; and that the said Miller, as soon as it had been ascertained by repeated trials that the horse was incurably unsound, offered to return him to the plaintiff, who refused to take him back, although the former offered to lose what he had already paid for the horse, which offer was made after the note fell due.   Whereupon the Court instructed the jury, at the prayer of the plaintiff, that if they should be of opinion, from the said evidence, that the said horse was, at the time of the said sale, utterly unsound and broken down, and had been broken down whilst in the plaintiff's possession, and was wholly unfit for, and incapable of, the action and fatigue ne-

1827.

Thornton
v.
Wynn.

1827.

Thornton

v.

Wynn.

cessary to a race horse, but that the said facts were not known to the plaintiff at the time of the said sale, the said facts are not a sufficient defence in this action to prevent the plaintiff from recovering.

Upon these instructions of the Court, the jury found a verdict for the plaintiff, and the cause now comes before this Court upon a writ of error.

Questions presented by the bill of exceptions.

This bill of exceptions presents two questions for the decision of this Court. The first is, whether the evidence offered by the plaintiff, and admitted by the Court. dispensed with the necessity of proving a demand of payment of the maker of the note, and due notice to Thornton of non-payment; and, secondly, whether the Court below erred or not, in stating to the jury that the alleged breach of the warranty of the horse, if proved to their satisfaction, was not a sufficient defence in this action to prevent the plaintiff from recovering, unless the facts stated in the bill of exceptions were known to the plaintiff at the time of the sale.

In the argument of the first question, the counsel on both sides considered the evidence offered by the plaintiff as presenting a double aspect. 1st. As authorizing a conclusion, in point of fact, that the note of hand on which the suit is brought, was made and passed to Thornton without consideration, and merely for his accommodation; and, 2d. As amounting to a promise to pay the note, or at least to an admission by Thornton of his liability to pay it, and of the right of the plaintiff to resort to him, whether it was made solely for his accommodation, or was given for value in the ordinary course of trade.

As to the first, the counsel treated the note throughout as an accommodation note, and submitted to the decision of this Court the question, whether the endorser of such a note was entitled to call for proof of a demand of payment of the maker, and notice to himself?

Whether this question was ever raised in the Court below, or in what manner it was there treated, does not appear from the bill of exceptions. It is possible that that Court may have intended nothing more by their direction to the jury, than to sanction the admissibility of the evidence, and its sufficiency to authorize a verdict for the plaintiff.

1827.

Thornton
v.
Wynn,

without other proof of demand and notice, provided the jury should be of opinion that it warranted the conclusion that the note was given without consideration. But such is not the language of the Court as stated in the bill of exceptions. The jury were informed that the evidence was competent to support the action without such further proof of demand and notice, without leaving the inference of fact that the note was given without consideration to be drawn by the jury. Had the Court distinctly stated to the jury that this was such a note, and, therefore, that further proof of demand and notice was unnecessary, the incorrectness of the direction could have been doubted by no person, since the Court would, in that case, have inferred a fact from the evidence, which it was competent to the jury alone to do. And yet it seems difficult to distinguish the supposed case from the one really presented by the bill of exceptions, upon the hypothesis that the Court below decided any thing as to the particular character of this note, since it is very obvious, that no question of fact was submitted to the consideration of the jury. It is, therefore, due from this Court to the one whose decision we are revising, to conclude, that that decision did not proceed upon the assumption that this was a note drawn for the accommodation of the endorser.

It remains to be considered, whether the direction was correct upon the other aspect of the evidence.

It is now well settled as a principle of the law merchant, that an unconditional promise by the drawer or endorser of a bill, to pay it, after full knowledge of all the circumstances necessary to apprize him of his discharge from his responsibility by the laches of the holder, amounts to an implied waiver of due notice of a demand of the drawer or acceptor, and dispenses with the necessity of proving it. Such are the cases of *Borrodaile* v. *Lowe*, (4 *Taunt.* 93.) *Donaldson* v. *Mears*, (4 *Dall.* 109.) and others which need not be cited. So if, with the knowledge of these circumstances, he answer, that the bill "must be paid," "that when he comes to town he would set the matter right," "that his affairs were then deranged, but that he would be glad to pay it as soon as his accounts with his agents was settled," or "that he would see it paid," or if he pay a part of the bill; in all

An unconditional promise to pay a-mounts to a waiver of notice.

So an acknowledgment of the drawer's or endorser's liability has the same effect.

1827.

Thornton
v.
Wynn.

these cases it has been decided that proof of regular notice is dispensed with. (2 *Term Rep.* 713. *Bull. N. P.* 276, 2 *Campb.* 188. 6 *East*, 16. 2 *Stra.* 1246.)

The principle upon which these decisions proceed is explained in many of the above cases, and particularly in that of *Rogers* v. *Stephens*, (2 *Term Rep.* 713.) It is this, that these declarations and acts amount to an admission of the party that the holder has a right to resort to him on the bill, and that he had received no damage for want of notice. See also *Stark. Evid.* 272.

The same principle applies with equal force to promissory notes, which, after endorsement, partake of the character of bills of exchange, the endorser being likened to the drawer, and the maker to the acceptor of a bill. The case of *Leffingwell & Pearpoint* v. *White*, (*Johns. Cas.* 99.) is that of a promissory note, where the endorser, before it became due, stated that the maker had absconded, and that, being secured, he would give a new note, and requested time. The Court say, that the defendant had admitted his responsibility, treated the note as his own, and negotiated for further time for payment, by which conduct he had waived the necessity of demand of the maker, and notice to himself. (*Taylor* v. *Jones*, 2 *Campb.* 105. *Vaughan* v. *Fuller*, 2 *Stra.* 1246. and *Aman* v. *Bailey*, *Bull. N. P.* 276.) were all cases of actions on promissory notes against the endorser. In this case, the defendant below, upon being informed that Miller, the maker of the note, had not paid it, observed, that he knew he had not, and that he was not to pay it; that it was the concern of the defendant alone, and that Miller had nothing to do with it, it having been given for part of the purchase money of a horse. These declarations amounted to an unequivocal admission of the original liability of the defendant to pay the note, and nothing more. It does not necessarily admit the right of the holder to resort to him on the note, and that he had received no damage from the want of notice, unless the jury, to whom the conclusion of the fact from the evidence ought to have been submitted, were satisfied that the defendant was also apprized of the laches of the holder in not making a regular demand of payment of the note, by which he was dis-

*Knowledge of the fact of the laches of the holder is essential to charge the endorser, upon his promise or acknowledgment.*

charged from his responsibility to pay it. The knowledge of this fact formed an indispensable part of the plaintiff's case, since without it it cannot fairly be inferred that the defendant intended to admit the right of the plaintiff to resort to him, if, in point of fact, he had been guilty of such laches as would discharge him in point of law. For any thing that appeared to the Court below from the evidence stated in the bill of exceptions, the admissions of the defendant may have been made upon the presumption that the holder had done all that the law required of him in order to charge the endorser. That due notice was not given to the defendant he could not fail to know; but that a regular demand of the maker of the note could not be inferred *by the Court* from the admissions of the defendant.

For the reasons above stated, the judgment of the Court below must be reversed, and the cause remanded for a new trial.

But since the second question before mentioned has been distinctly brought to the notice of this Court, has been fully argued, and must again be decided by the Court below, it becomes necessary that this Court should pass an opinion upon it. That question is, whether the alleged breach of the warranty of the horse, the price of which formed part of the consideration of the note, if proved to the satisfaction of the jury, was a sufficient defence in this action to prevent the plaintiff from recovering, unless the facts stated in the bill of exceptions were known to the plaintiff below at the time of the sale ?

The question is not whether the purchaser of a horse which is warranted sound, has a remedy over against the vendor, upon the warranty, in case it be broken, but whether, in an action against him for the purchase money, he can be permitted to defend himself by proving a breach of the warranty.

The cases upon this subject are principally those where the vendee, having executed the contract on his part, by paying the purchase money, brought an action of *indebitatus assumpsit* against the vendor as for money had and received to his use. But it is perfectly clear, that the reasoning of the Court in those cases applies with equal force to

*Margin notes:*

1827.

Thornton v. Wynn.

Question as to the breach of the warranty in the sale, which formed part of the consideration of the note.

How far it constituted a defence to the action on the note.

1827.

Thornton
v.
Wynn.

a case where the breach of the warranty is set up by the vendee as a defence against an action against him to recover the purchase money.

The first case we meet with on this subject, is that of *Power* v. *Wells*, of which a very imperfect report is to be seen in a short note in *Dougl.* 24. and in *Cowp. Rep.* 818. There the plaintiff gave a horse and 20 guineas to the defendant, for another horse, which he warranted to be sound, but which proved otherwise. The plaintiff offered to return the horse, which was refused, and the plaintiff brought two actions, one for money had and received, to recover back the 20 guineas which he had paid, and an action of trover for the horse, possession of which the plaintiff had delivered to the defendant. The Court decided, that neither action could be maintained ; not the second, because the property had been changed. This case was referred to by the Judge who had decided it at *Nisi Prius*, in the case of *Weston* v. *Downes*, (*Dougl.* 23.) which soon after came before the Court of King's Bench. That was an action for money had and received, and the case was, that the plaintiff had paid a certain sum to the defendant for a pair of horses, which the defendant agreed, at the time, to take back, if they were disapproved of, and returned within a month. They were returned accordingly within the stipulated period, and another pair was sent in their stead, without any new agreement. These were likewise returned, and accepted by the vendor, and a third pair were sent, which being likewise offered to be returned, the vendor refused to take them back. Lord Mansfield was against the action, because the contract, being a special one, the defendant ought to have notice by the declaration that he was sued upon it. Ashhurst, J., was of the same opinion ; but added, that if the plaintiff had demanded his money on the return of the first pair of horses, this action would have lain, but that the contract was continued ; from which expression nothing more is understood to have been meant, than that the contract remained open. The ground upon which Buller, J., thought that the action could not be maintained was, that, by refusing to take back the horses, the defendant had not precluded himself from entering into

the nature of the contract, and that, whenever that is open, it must be stated specially.

The meaning of these latter expressions is distinctly stated by the Court, and particularly by this judge, in the case of *Towers v. Barret,* (1 *Term Rep.* 133.) which followed next in order of time; that was also an action for money had and received. The money was paid for a horse and chaise, to be returned in case the plaintiff's wife should not approve of them. They were accordingly sent back to the defendant in three days after the sale, and left on his premises against his consent to receive them.

Lord Mansfield, Ch. J., and Willis, J., distinguish this case from that of *Weston v. Downes,* upon the ground that that was an absolute, and this a conditional agreement, which was at an end by the return of the horse and chaise, and was no longer open. Both the judges treat the case as if the vendor had taken back the property, although, in fact, he had not consented to do so. Ashhurst, J. was of opinion, that this case would have resembled that of *Weston v. Downes,* if, in that, the plaintiff had returned the horses. It is very clear, from what was said by the same judge in that case, that his meaning in this was, if the plaintiff had returned the *first pair of horses,* and then demanded his money; for, he adds, that in that case there was an end of the first contract by the plaintiff's taking other pairs, and this constituted a new contract, not made on the terms of the first. But in this case the contract was conditional, and when the horse and chaise were returned, the contract was at an end, and the defendant held the money against conscience. Buller, J., is still more explicit. He says, that the defendant, by *the contract,* had put it in the power of the plaintiff to terminate it, by returning the horse and chaise, and that the plaintiff had no option to refuse to take them back; and that being bound to receive them, the case was the same as if he had actually accepted them. He adds, that the distinction between those cases where the contract is open, and where it is not, is, that if it be rescinded, *either by the original terms of the contract,* as in this case, where no act remains to be done by the defendant, or *by a subsequent assent* by him, the plaintiff may recover back his whole

1827.

Thornton
v.
Wynn.

money, and then this action will lie. But if it be open, the plaintiff's demand is only for damages arising out of the contract.

The Court proceeded upon this distinction in deciding the case of *Payne* v. *Whale*, (7 *East's Rep.* 274.) which followed the one just noticed. The action was to recover back money paid to the defendant for a horse sold by him to the plaintiff, which he warranted sound. The plaintiff offered to return the horse upon an allegation of his unsoundness, which the defendant denied, and refused to take him back, but agreed that, if he was in fact unsound, he would take him back, and return the purchase money. The unsoundness was proved at the trial; but the Court was of opinion, that the action could not be supported, and distinguished this case from the preceding one by observing, that in that the plaintiff had an option, by *the original contract*, to rescind it on a certain event; but, here, it was no part of the original contract that the horse was to be taken back; and that the subsequent promise amounted to no more than that he would take him back if the warranty were shown to be broken, which still left the question of warranty open for discussion, and then the form of the action ought to give the defendant notice of it by being brought upon the warranty.

The case of *Lewis* v. *Congrave*, (2 *Taunt.* 2.) was precisely like the present, in which the same distinction, and the same principles, were recognised by the judge who tried the cause at *Nisi Prius*. It was an action on a bill drawn for the price of a horse, which, on the sale of him, was warranted sound, but turned out not to be so. The defendant offered to return the horse, which was refused, and the defendant left him in the plaintiff's stable without his knowledge. The judge decided, that as the plaintiff had refused to take back the horse, the contract of sale was not rescinded, and, consequently, that the defendant must pay the bill, and take his remedy by action for the deceit. But upon a rule to show cause why a new trial should not be granted, the Court said, that it was clear the plaintiff knew of the unsoundness of the horse, which was clearly a fraud, and that no man can recover the price of an article sold under a

fraud. See also the cases of *Fortune* v. *Lingham*, (2 *Campb.* 416.) and *Solomon* v. *Turner*, (1 *Stark.* 51.)

The result of the above cases is this : if, upon a sale with a warranty, or if, by the special terms of the contract, the vendee is at liberty to return the article sold, an offer to return it is equivalent to an offer accepted by the vendor, and, in that case, the contract is rescinded and at an end, which is a sufficient defence to an action brought by the vendor for the purchase money, or to enable the vendee to maintain an action for money had and received in case the purchase money has been paid. The consequences are the same where the sale is absolute, and the vendor afterwards consents, unconditionally, to take back the property ; because, in both, the contract is rescinded by the agreement of the parties, and the vendee is well entitled to retain the purchase money in the one case, or to recover it back in the other. But if the sale be absolute, and there be no subsequent agreement or consent of the vendor to take back the article, the contract remains open, and the vendee is put to his action upon the warranty, unless it be proved that the vendor knew of the unsoundness of the article, and the vendee tendered a return of it within a reasonable time. We are, therefore, of opinion, that the direction of the Court in this case, upon the second exception, was entirely correct. The judgment is to be reversed, and the cause remanded to the Court below for a new trial.

General result of the authorities.</div>