### IN

# THE SUPREME COURT

#### OF THE

## STATE OF NEW-YORK,

#### IN THE YEAR 1842.

---

## JOSEPH A. LATTIN *vs.* LEVI DAVIS.

Defendant sold plaintiff a quantity of apples to be delivered at Barre, in this state. At the time of the sale, it was agreed that the apples were to be "good ingrafted winter fruit," and it was understood that they were intended, or to be put up for the Canada market. They were accordingly delivered to plaintiff at Barre, and he took them to Toronto, Canada, where the barrels were opened and some of the apples found to be damaged. *Held*, in an action of assumpsit, alleging a breach of warranty, that the measure of damages was not the difference between the real value of the apples as they proved to be, and the price of good merchantable fruit in the Canada market, deducting the price of transportation to that place. COWEN, J., dissented.

The true measure of damages is the difference in value between a sound and the unsound article at the place of delivery, and the plaintiff is not entitled to recover any thing on the ground of a loss of profits. (a)

If the apples had been wholly lost in consequence of the fault of the vendor, the vendee might recover the expenses of transportation to the contemplated market, in addition to the price paid for the fruit. But he could in no event go beyond that, and recover any thing on the ground of a loss of profits. *Per* BRONSON, J.

Cases cited by BRONSON, J., in which the vendee is entitled to recover more than the difference in value, where he has sustained a loss which is the direct and immediate consequence of the defect in the goods.

---

(a) See *Beals* v. *Terry*, 2 Sandf., 127. In an action on a contract for the non-delivery of merchandise, the plaintiff is entitled to recover the difference between the contract price and the market value of the article at the time and place specified for its delivery, with interest thereon; and it is not within the discretion of the jury to allow interest or not, as the plaintiff is legally entitled to it. *Clark* v. *Dales*, 20 Barb., 42; *Dana* v. *Fiedler*, 2 Kern., 40. And in

D.—III.          2

ERROR to Orleans common pleas. Davis sued Lattin in the court below, and declared in assumpsit on a warranty of the quality of 271 barrels of apples sold by the defendant to the plaintiff. The defendant lived at Barre, Orleans county, and in the fall of 1840 agreed to sell the plaintiff all the apples he should have to spare at five shillings per barrel — the plaintiff furnishing the barrels. The agent who made the bargain for the plaintiff testified, that the apples were all to be good ingrafted winter fruit, and he told the defendant they were intended for the Canada market. Another witness testified to a conversation between the parties after a part of the apples had been put up, in which the defendant said the apples were to be ingrafted, culti-vated fruit, and that they were to be put up for the Canada market. The plaintiff took the apples, after they had been put up by the defendant in barrels, transported them to Toronto in Upper Canada, and sold the whole of them in that market. On opening the barrels in Canada, some of the apples were found not to be merchantable for that market in consequence of bruises and rots. Some of the apples were in very good condition. The plaintiff offered to prove what was the price of good merchantable apples at that time in Toronto. The defendant objected to the evi-dence, insisting that the price at Toronto could not form the criterion of damages, the place of delivery being at Barre, in this state. The plaintiff insisted upon giving the evidence, because the apples were purchased for the Canada market. The court decided that the evidence was proper,

---

*Dana* v. *Fiedler* it was held, that, in ascertaining the amount of damages, the evidence should be confined to the actual market value of the article sold, at the time and place of delivery; and the defendant was not allowed to inquire as to the probable effect of adding to the quantity in market that which he had agreed to deliver. *Id.* The amount of damages depends upon the market price at which the vendee could have purchased the commodity at the time and place of delivery, not that which he could then and there have sold it at, if it had been delivered to him. *Id.* In an action against a railroad company for negligence in not conveying a quantity of butter to market within a reason-able time, plaintiff can not recover, as damages, the difference between the price of butter at the time it should have been delivered, and its price at the time when the butter was in fact delivered. *Wibert* v. *New York and Erie Railroad Co.*, 19 Barb., 36; and see cases there collected.

and gave their opinion that the measure of damages in this case must be the difference between the real value of the apples as they proved to be, and the price of good merchantable fruit in the Canada market, deducting the price of transportation to that place. The defendant excepted. The plaintiff then proved that good merchantable apples were, at the time in question, worth in Canada from 14 to 20 shillings a barrel, and that the cost of transportation from the defendant's orchard to market, was four shillings and four pence a barrel. One witness said the apples in question were not worth over six shillings a barrel in Canada, and another said they were not worth over 10 or 12 shillings a barrel. It did not appear how much they were sold for.

Nathaniel Lattin, a witness for the defendant, testified, among other things, that he was the defendant's father; that he had previously told the defendant to sell his (the witness's) apples at the same time he sold his own, and that about 90 barrels of the apples sold to the plaintiff by the defendant came from the orchard of the witness, and the defendant paid him for them. The plaintiff moved to strike out the testimony of the witness, on the ground of interest, insisting that should the plaintiff recover, the defendant could maintain an action against the witness for the proportion of the apples which came from his orchard; and the court granted the motion. The defendant excepted. The defendant then released the witness, and it was agreed that his testimony should stand the same as though it had been given after the release was executed. The jury found a verdict for the plaintiff for $299·13, on which judgment was rendered, and the defendant now brings error.

*B. L. Bessac* and *H. R. Selden*, for plaintiff in error.

*M. T. Reynolds*, for defendant in error.

BRONSON, J. The defendant agreed to sell " good ingrafted winter fruit," and the only proof tending to show a breach of the contract was the fact that some of the apples were in an unsound condition when they arrived in Canada.

The jury must have believed that there was some want of care or skill in gathering and putting up the apples. The action was assumpsit, alleging a breach of the warranty. There was no count in the declaration under which the plaintiff could have claimed to recover on the ground of fraud, nor was there any pretence on the trial that there had been any fraud on the part of the defendant. The plaintiff paid five shillings per barrel for the apples, and he has recovered damages at the rate of nearly nine shillings per barrel, and the question is, whether the court below laid down the proper rule of damages for the guidance of the jury. I think they did not.

The defendant agreed to sell apples of a particular kind and quality, to be delivered on his farm in Barre. He knew that the apples were purchased for the Canada market; but he did not agree to deliver them in Canada, nor did he make any contract whatever in relation to that market. If there was any defect in the fruit, the plaintiff was entitled to recover the difference in value between a sound and the unsound article at the place of delivery. If in any event he could recover more, it could only be allowed by way of indemnity, and not on the ground of a loss of profits.

When there is a total failure on the part of the vendor to perform a contract for the sale of goods, the rule of damages is, the difference between the contract price and the market value of the article at the place where it should have been delivered. If the value of the goods at other places in the same neighborhood may be shown, it can only be done for the purpose of ascertaining the true value at the place of delivery. That is the controling fact. (*Gregory* v. *McDowel*, 8 Wend., 435.) If the contract has been performed so far as relates to the delivery of the goods, and by reason of some defect they do not correspond with the contract, the primary rule of damages is the difference between the price paid, or the value of such goods as were bargained for, and the value of the defective article which was delivered; and in this case, also, the inquiry is, what was the value of the goods at the place of delivery. But where the vendee has actually sustained other damage, which is the direct and

immediate consequence of the defect in the goods, it seems that such damage may be recovered from the vendor. See *Long on Sales,* 478–9, ed. of '39. In *Lewis* v. *Peake,* 7 Taunt., 153, the defendant sold a horse to the plaintiff with a warranty of soundness, and the plaintiff, confiding in the defendant's warranty, re-sold the horse with warranty to Dowling. The horse proving unsound, Dowling sued the plaintiff and recovered damages and costs. The defendant had notice of that action and the option of defending it, but he did nothing. In an action against the defendant on his contract of warranty, the plaintiff was allowed to recover the costs as well as the damages which he had been compelled to pay to Dowling. The same principle was asserted in *Mainwaring* v. *Brandon,* 8 Taunt., 202. In *Borradaile* v. *Brunton,* 8 Taunt., 535, the defendant sold a chain cable to the plaintiff, and warranted it sufficient to hold the anchor. The anchor having been lost in consequence of the insufficiency of the cable, the plaintiff was allowed to recover the value of the anchor, as well as the price of the cable. In *Neale* v. *Wyllie,* 3 Barn. & Cress., 533, the plaintiff, who as tenant of certain premises had covenanted to repair, underlet the property to the defendant, taking a like covenant. The defendant suffered the premises to be out of repair, and left them in that condition, in consequence of which the plaintiff was compelled to pay damages and costs in an action brought against him by the original lessor. It was held that the plaintiff was entitled to recover those damages and costs, and the costs of the defence, in an action upon the defendant's covenant. Without stopping to inquire whether all of these cases stand on a solid foundation, it is sufficient for the present occasion to remark, that in no instance was the plaintiff allowed to recover any thing more than the damages which he had actually sustained. He was allowed nothing for the profits which he might have realized if the contract had been fully performed. Such damages are never allowed, unless they have been specially provided for in the contract. (*Blanchard* v. *Ely,* 21 Wend., 342.) I find no such provision in this case.

Although the defendant made no contract concerning a

foreign market, he knew the apples were to be sent to Canada, and that the plaintiff would have no opportunity to inspect the fruit until it reached the place of destination. Under these circumstances the plaintiff may, perhaps, be entitled to such damages as he has actually sustained in consequence of the improper manner of gathering and putting up the apples, although the damages should exceed the difference in value between a sound and the unsound article at the place of delivery. If, for example, the apples had been wholly lost in consequence of the fault of the vendor, the vendee might recover the expenses of transportation to the contemplated market, in addition to the price paid for the fruit. But he could in no event go beyond that, and recover any thing on the ground of a loss of profits. The court below evidently took a different view of the question, and most of the sum which the plaintiff has recovered stands on the ground of a loss of profits. The apples cost five shillings per barrel, and the expense of transportation was four shillings and four pence — making in all nine shillings and four pence. What the apples sold for in Canada does not appear, but according to the lowest estimate of the plaintiff's witnesses they were worth six shillings a barrel. The actual loss, therefore, did not exceed three shillings and four pence, and yet the plaintiff has recovered at the rate of nearly nine shillings per barrel. The evidence of the value of merchantable fruit in Canada was neither offered nor received for the purpose of ascertaining the value at Barre — the place of delivery; but it was evidently offered and admitted for the purpose of giving the plaintiff such profits as he might have made if there had been no defect in the apples. It is very questionable whether the evidence was admissible in any point of view; but clearly it should not have been admitted as forming in itself the basis for estimating damages.

As the judgment must be reversed on this ground, I have not examined the other questions.

NELSON, C. J., concurred.

COWEN, J. The contract by Lattin with Davis, as proved

by Tousley, was, that the apples were to be grafted culti-
vated fruit; and that they were to be put up for the Canadian
market. Upon this evidence, the court below held the con-
tract to be a warranty that the fruit should not only be
grafted and cultivated, but moreover adapted to the Cana-
dian market, and decided that the true measure of damages
must be the difference between the real value of the apples
as they proved to be, and the price of good merchantable
fruit in the Canada market, deducting the price of trans-
porting the same there. The proof was quite direct, the
parties appearing to have called on Tousley for the purpose
of having him act as an attesting witness of the bargain;
and the words do, I think, amount to what the court below
supposed. The parties must have understood the one as
purchasing and the other as selling the article in reference
to the Canada market; the warranty must be understood
accordingly (*Long on Sales*, 205, *Am. ed. of* 1839, *and the
cases there cited*), and, therefore, could not be satisfied
short of the measure which the court prescribed. The de-
fendant below was bound to make good the value of the
article in the market to which the warranty referred. The
general rule is undoubtedly as contended for by the counsel
for the plaintiff in error, that the measure of damages for
breach of a warranty in respect to quality, is the difference
at the place of sale; but it may in terms go beyond; and
in following out the special provision the law does no more
than it often does in other cases; allow the parties to agree
that the case shall form an exception to the general rule.
The form into which the law throws such a contract as the
one in question is, "I promise that the apples shall be equal
to a merchantable article of the kind in Canada." Coming
short of that through a defect of quality, the promise must
be made good according to its legal effect. The falling off
in Canada must be supplied. The rule laid down and the
cases cited in *Blanchard* v. *Ely*, 21 Wend., 347, 8, are not
incompatible with this view of the question. At pages 348,
9, it is admitted that the vendor may, by a contract, express
or tacit, incur liability for extrinsic damages beyond those
allowed by the general rule. And in *Driggs* v. *Dwight*, 17

Wend., 71, we held that by a breach of promise to demise a tavern stand at a day certain, the promisor rendered himself liable for the promisee's expenses in breaking up his former residence and removing to take possession.

It follows that the court below were right in allowing evidence of the manner in which the property was treated on its going to the Canada market and being offered for sale. The warranty having been broken in fact, it was proper to show that persons, to whom the apples were presented as purchasers, declined altogether by reason of the defect, or refused for the same reason to give more than a certain price. The proof is objected to as naked declaration; but it was not so. It was a part of the *res gestæ,* and as such proper to qualify and give point to the refusal of purchasers.

Nathaniel Lattin was not finally rejected. He was released and sworn as a witness. The exception taken on the ground of his previous rejection was thus obviated. The exception complained that he was erroneously rejected as incompetent, whereas he was in fact received as competent. The possible effect which the first rejection may have had on his credibility with the jury does not entitle the plaintiff in error to insist on the exception.

Clearly it is no objection that the plaintiff below sold the apples on his own account. The property passed; and there being no fraud, he could not sell them for the account of the defendant. The well settled rule of the present day is that for a naked breach of warranty without fraud, the vendee has no right to insist on the defective article being taken back. He can not rescind the contract without the consent of the vendor. (*Street* v. *Blay,* 2 Barn. & Adolph., 456; *Gompertz* v. *Dent,* 2 Crompt. & Mees., 207; *Patteshall* v. *Tranter,* 3 Adolph & Ellis, 103; *S. C.,* 4 Nev. & Mann., 649; *Freeman* v. *Baker,* 5 Carr. & Payne, 475; *Thornton* v. *Wynn,* 12 Wheat., 183, 189, 193; *Lightburn* v. *Cooper,* 1 Dana, 273.)

The doctrine of the courts in Maryland, to which we were referred, that a sale by the vendee on his own account, after a breach of the warranty, forfeits all claim for damages. (*Rutter* v. *Blake* 2 Har. & John., 353–5), is founded on a rule which is admitted by those courts to be peculiar to that

state, and contrary to the weight of common law authority, viz., that the vendee may rescind as well for breach of simple warranty as for fraud. (*Franklin* v. *Long*, 7 Gill & John., 407–419.) That a neglect to rescind, and even a sale on the vendee's own account, should be followed by a forfeiture of all claim for damages, admitting the right of the vendee to be as holden in Maryland, seems to me a still more obvious departure from the English cases. The utmost which we understand to be holden by any of those cases at any time is, that the vendee may elect either to retain and sell the property, or rescind, and in either case sue for damages.

But the informality in the entry of the verdict can not be got over. The entry should have been directly of a trial by jury at the time and place specified by the order for trial on the record, whereas it states that the said judges before whom said issue was tried have sent hither their record had before them in these words, &c. Then follows a postea nearly in the form of one at the circuit, which is not in terms connected with the issue ordered to be tried. It may, for aught that appears, relate to another and distinct issue not on the record in question. I think the judgment should, for that reason, be reversed, with leave, however, to amend on paying the costs of the plaintiff in error. (2 R. S. 344, § 7, 8, 2d ed.)

Judgment reversed.