THOMPSON, J.,
after stating the facts, proceeded as follows:
There may be cases, where a contract under seal, and another and additional and supplemental contract b3 parol, in relation to the same subject-matter of contract, may co-exist, without one being merged or incorporated in, or substituted for, the other, and for the violation of which, the injured party is bound to pursue the several and distinct actions or forms of remedy appropriate to each; but, certain it is, the plaintiff or his counsel did not understand this to be a case of that description. He has adopted a form of action inappropriate to the covenant. He has mingled the whole work done under both the old and new contract in the same bill of particulars, given credits for payments made generally upon the whole work; and has, I think, shown that he regarded the old contract or covenant incorporated in, and substituted by, the new parol agreement, whereby the covenant, as a specialty, ceased to exist, and became only a written memorial of the terms of the new contract, so far as it was not altered by variations of, additions to, or diminutions from, the original contract. The evidence of the new contract, stated in the first bill of exceptions, introduced in part by the plaintiff, and in part by the defendant, seems to me to establish, that it was the design of the parties to substitute the new for the old contract. The plaintiff so regarding it, and treating it as a contract executed and performed on his part, brought indebitatus assumpsit. It was the proper action — first, because, in a special action of assumpsit, he might have been embarrassed by reason of his not having, in all respects, fulfilled the contract on his part; and, secondly, because, in relation to the extra work, for which there was no stipulated or contract price, his demand could only be asserted, and a recovery had upon *a quantum meruit or quantum valebat count. And the question we have to consider is, Whether, in such an action for work, labor and materials, performed and furnished in the erection of a house, upon a contract or contracts, in which the prices are only stipulated and fixed in part, and as to the residue, depending upon a quantum meruit and valebat, in which, too, the plaintiff bound himself expressly, to complete the building according to contract, and faithfully, in all respects; and upon failure to complete and deliver the building at the time appointed, agreed that Davis should deduct from the contract price of the house the rent he would have received for such time as the said Baxter may have so failed, the- defendant was entitled to claim an offset, or rather a diminution of, or deduction from, the plaintiff’s damages for unfaithful or defective execution of the work, and for rents during the time the plaintiff failed to complete and deliver the house, or must, according to the ruling of the court below, be turned around to his cross action?
The right to rely upon these defences was denied the defendant, upon the ground that it was an attempt to offset unliquidated damages. He claimed neither an offset nor unliquidated damages in the legal and proper sense of the term. As to the deficiency in the work, it was proper evidence under the general issue of non-assumpsit to prove the real value of the plaintiff’s work and labor and materials, in mitigation, diminution or recoupment of the plaintiff’s damages. As to the rents, it was still more proper, because by the contract it was expressly stipulated that the proper deduction was to be made for rents; and even if the rents could be regarded as of the nature *698 of unliquidated damages, the plaintiff certainty had the right to contract and bind himself to allow the deduction; but, in truth, they were no more unliquidated damages, than the damages claimed by the plaintiff himself; they depended upon contract and computation, and assessment to be made by a jury, and under the maxim, Id certum est quod certum reddi *potest, were as certain as the plaintiff’s damages upon the quantum meruit count. Had. the covenant remained in full force and the action brought upon it, according to repeated adjudications in the State of Hew York, there would be no doubt of the defendant’s right to make both of the defences from which he was excluded by the court below. And had the action been special assumpsit, instead of general indebitatus, he would have been equally entitled, according to the modern English decisions, the adjudications of the courts of New Hampshire, Massachusetts, Connecticut, New York and Pennsylvania, and according to the late and repeated decisions of the Supreme Court, overruling Thornton v. Winn, 12 Wheat. 183, in which the old and restricted doctrine was held; see 2 Smith’s Heading Cases, p. 33, and Sedgwick on the Measure of Damage, from p. 4S7 to 486, where the whole doctrine, ancient and modern, English and American, is lucidly stated and learnedly deduced from the authorities. The cases cited by the appellant’s counsel, from 9th, 11th and 14th Howard, are in point and in harmon3’’ with the decisions of the New York courts. So overwhelming were these authorities, that the opening counsel of the appellees conceded that the case was against him upon the state of decision in England, and the States referred, to ; but he undertook to show that the law was different in Virginia; that her courts and Legislature had adhered to the old common law rule of restriction, applied in some of the early English adjudications. The reason of the rule in its origin was the same as that which denied to a defendant the right of offset in .any case, and which forbade double pleading, because of the policy of the ancient common law, which confined the plaintiff to a single count and cause of action, the defendant to a single plea, in order that a single issue might be evolved for the consideration of the jury. The counsel, whilst he has been able to find and cite some early English cases, wherein the doctrine he contends for has been held in actions of special assump-sit, has failed to cite any Virginia *case in point. Certainty the case of Tomlinson v. Mason, which was an action of debt on a bond, cannot be relied on as having any direct bearing on the question, much less as a case in point. And I have seen no case, late or early, English or American, in which it has been held in an action of general indebitatus assumpsit, that the defendant was precluded from giving evidence under the general issue tending to show, that by reason of breach of warranty, (if the action be for goods sold and delivered,) or of negligence and unfaithful performance, (if the action be for work and labor or services,) the plaintiff was not entitled ex equo et bono to the amount of damage he claimed. In other words, where the defendant was precluded from giving evidence in diminution, or, if you choose, in recoupment of damages, by analogy to the right of a defendant in actions of tort to give evidence in mitigation of damages. The counsel 'admitted this to be the law where the action was founded upon a quantum meruit or quantum valebat; but insisted, that where the action was general indebitatus upon a special contract, executed and performed, that the same -rule applied as in special assumpsit. For this practice he did not, and I think could not, cite any authority.
The only difference between indebitatus for the price of work executed upon special contract, and a quantum meruit or valebat, is, that in the first, the action is not upon the special contract, but the special contract is resorted to as evidence of the defendant’s request and of the value of the goods or services, conclusive as to value or price upon the plaintiff, and prima facie binding upon the defendant, and, indeed, conclusive upon him, unless he can shew, by evidence, good grounds for a diminution, abatement or deduction in price or value, and that the plaintiff is not ex equo et bona entitled to the contract price. Failing to find a Virginia case to sustain him, the counsel relied upon $ 62 of the Act of 1831, Supplement to the Code, p. 1S7, as containing a legislative declaration of the law *at the date of its enactment, and argued that, because the Legislature, who must be presumed to know the law, had given the right of equitable offset “in all actions at law, founded on contract, whether such contract be by deed or parol,” in certain cases of fraud or failure in the consideration or breach of warranty, that it proves that in no actions at law, upon parol contract, no matter what the form of the action as the law stood, could a defendant make such a defence as this — otherwise the law was useless; and that, since that law, which has continued on the statute book from its enactment until the present time, the de-fence sought to be made in the court below could only be availed of by an equitable plea of offset, according to the provisions of that statute. That strikes me as a very novel construction of that law. Its leading object was to allow defendants to go behind and enquire into the consideration of specialties upon equitable pleas of offsets ; and if you choose, to enable defendants to make such defences in case of parol contracts, where, by the rules of the common law, the defence could not be made in a legal forum. What those cases of parol contracts were, which were in the legislative mind, I will not stop to enquire or to enumerate, because most certain is it that the act was not intended to take from a defendant a single legal right or defence, but to enlarge the right of defence in a court of law. To *699 shew the consequences to which such a construction would lead, take the case of a promissory note, on which the plaintiff elects to bring- an action of general indebi-tatus assumpsit, which he ma3 do, and give the note in evidence to support his action. The defendant pleads non-assumpsit. As the law stood in 1831, I suppose no one would gainsay the defendant’s right to prove fraud, illegality or failure in the consideration. Suppose he had on the same or a similar note brought debt, and the defendant pleaded nil debet, it is equally certain, under that issue, he might have proved fraud, illegality or failure in the Consideration, and have defeated the plaintiff. I could multiply cases of a similar kind; yet nobody has ever supposed that these defences must now be made in the form of an equitable plea under the statute, which would follow as a consequence from the counsel’s construction of the statute. I cannot give to a statute, whose object was to enlarge the right of defence in a legal forum, a construction and effect so diametrically opposed to its policy and purpose, and hold that it was designed to preclude such a defence as this, (except in the form of an equitable plea,) a defence clearly admissible at law, in a case of general indebitatus assumpsit, according to all the authorities, ancient and modern, English and American. And in view of the reasonableness of the doctrine, its result in preventing circuity of action or multiplicity of suits, the concurring decisions of the English and American courts, State and Federal, in actions of special assumpsit, and in the absence of any Virginia decision in point, to constrain me to render a different decision, I should, without hesitation, if this were a special action of assumpsit, hold that the defendant had the right to make the same defences, which he was precluded from doing in this case in the court below. Indeed, according to the New York and English decisions, the question is now, not whether the defendant may make such a defence to the action brought against him, if he so elect, but whether he is not bound to make it, and failing to do so, is estopped from bringing his independent cross-action against the plaintiff. Upon this point, there have been decisions both ways. I think the better opinion is, that in actions of special as-sumpsit, if not general indebitatus, it should be left optional with the defendant, either to make the defence in the action against him, or to seek his redress in a cross-action against the plaintiff.
I am, therefore, of opinion, that the court below erred in excluding the defences and proofs relied on *and tendered, as set forth in both bills of exceptions, and that, for that reason, the judgment must be reversed, the verdict set aside, a new trial awarded, and the cause remanded, with the proper instructions, in order to prevent a repetition of the error.
The other judges concurred.
Judgment reversed.