JOSEPH H. LYON, PLAINTIFF IN ERROR, *v.* JOHN BERTRAM, ALEXANDER H. TWOMBLY, AND EDWIN LAMSON.

Where there was a contract for the purchase of a cargo of flour, and a portion of it was delivered, paid for, and used by the purchaser, he cannot repudiate the contract, upon the ground that the brand upon the flour was not that for which he contracted.

The cases upon this point examined.

Where the statute of limitations imposes a bar upon certain species of contracts after three years, and upon others after two years, and the plea did not show that the contract in question was of the latter class, the plea was bad.

The laws of California require that actions shall be prosecuted in the name of the real party in interest, and that all parties having an interest in the subject of the action may be joined. So that this statute is complied with, it is not a fatal objection that the respective interests of parties *jointly* concerned are not accurately set forth.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the district of California.

The facts are particularly stated in the opinion of the court.

It was argued by *Mr. Brent* and *Mr. Poe* for the plaintiff in error, and *Mr. Fessenden* for the defendants.

The counsel for the plaintiff in error, after stating their objections to the pleadings in the case, and also those which were founded on the statute of limitations in California, contended that this was not an entire contract for the purchase of the whole cargo, but only for so much of it as was branded Haxall; that the description of the quality was material; that Lyon, if had chosen, could have declined to receive any part of the cargo; that the acceptance of a part, under the circumstances, did not affect his right to repudiate the residue.

*Mr. Fessenden* contended that the contract was entire; that it was an executed contract; that the term Haxall was descriptive merely, and not material; that if it was material, then it was an express warranty upon which the purchaser must rely, without rescinding the contract; and that the acceptance of a part was an acceptance of the whole.

Mr. Justice CAMPBELL delivered the opinion of the court.

This suit was commenced by the defendants in error, to recover the price for a cargo of flour, bargained and sold to the plaintiff in error, in the city of San Francisco. The judgment of the Circuit Court was rendered upon a special verdict in favor of the plaintiffs in that court. The verdict finds that on the 13th January, 1853, the plaintiffs, and Flint, Peabody, & Co., were, jointly, the owners of a cargo of flour, consisting of two thousand barrels, branded, and which were in fact Gallego, then being on the barque Ork, lying at a public wharf in San Francisco, and composing its entire cargo of flour, which inspected 1,771 barrels superfine, and 229 bad.

The firm of Flint, Peabody, & Co., as agents and part owners, on the day aforesaid, concluded the following agreement with the defendant:

*Lyon v. Bertram et al.*

SAN FRANCISCO, *January* 13, 1853.

Sold this day to Joseph H. Lyon, Esq., a cargo of Haxall flour, now on board the barque Ork, lying in this harbor, being about two thousand barrels, on the following terms and conditions, viz: Joseph H. Lyon, Esq., agrees to pay Messrs. Flint, Peabody, & Co., thirty dollars per barrel for such as shall inspect superfine, and twenty-seven dollars per barrel for such as shall inspect bad; payment to be made as it may be delivered, and to be received and paid for on or before the expiration of three weeks from date.

If Messrs. Flint, Peabody, & Co., elect, they can land and store the flour at the expiration of one week, or so much as may remain on board at that time, Mr. Lyon paying storage and drayage expenses.       J. H. LYON.

FLINT, PEABODY, & CO.

On the 25th January, 1853, the defendant applied to Flint, Peabody, & Co., for fifty barrels of flour, so purchased by him, by a written order, as follows:

SAN FRANCISCO, *January* 25, 1853.

Messrs. Flint, Peabody, & Co., will please deliver Mr. William R. Gorham, or bearer, fifty barrels of flour, out of the lot purchased from the ship Ork, and oblige       J. H. LYON.

Paying them therefor the contract price, amounting to the sum of $1,500, and received from Flint, Peabody, & Co., the following order:

SAN FRANCISCO, *January* 25, 1853.

*Captain of Barque Ork:* Please deliver the bearer fifty barrels superfine flour, and oblige       FLINT, PEABODY, & CO.

Fifty barrels of Gallego flour, inspecting superfine, being part of said cargo of flour on board the barque Ork, was delivered from the barque to William R. Gorham, a baker, to whom the defendant had sold and transferred the delivery order and the said flour. When the order was made for William R. Gorham, the defendant represented that the flour was Haxall. On the 29th January, 1853, the defendant sold to Dunne & Co. fifty barrels of flour, which he represented to be Haxall, and gave the following order, bearing date on that day:

Messrs. Grey & Doane will please deliver Messrs. Dunne & Co. fifty barrels of Haxall flour from Ork.       J. H. LYON.

The said Dunne & Co., on discovering that the flour was not

Haxall, but Gallego, refused to take it, and so notified the defendant. On the 31st of January, 1853, the defendant made further application for one hundred barrels of flour, being part of the flour so purchased as aforesaid, and gave his check on his bankers for the price, and received the following delivery order from Flint, Peabody, & Co., bearing that date:

*Capt. Hutchings, Barque Oak:* Please deliver to J. H. Lyon, or to the order of Grey & Doane, one hundred barrels superfine flour, and oblige, &c.

The check was not paid on presentation. Upon the refusal of Dunne & Co. to take the flour, the defendant, on learning the fact, notified the plaintiffs that he would not take the flour, and countermanded the payment of the check he had given for the one hundred barrels last mentioned.

On the 3d of February, 1853, the plaintiffs informed the defendant that they were prepared to deliver the remainder of the cargo, and requested the defendant to receive it. And subsequently, on the same day, they addressed him a note, in which they advised him they would sell the flour on the 5th February, at public auction, for his account, and would hold him responsible for the difference there might be in the net proceeds of the proposed sale and the contract price, and for charges and expenses, he (Lyon) having declined to take the flour under the contract. All the flour on the barque was of the brand known as Gallego, and the barrels were branded Gallego in printed characters from two to two and one-half inches in length, on both heads. In the opinion of some experts, there existed no difference in the quality or price of the flour of either brand, (Haxall and Gallego,) each inspecting superfine; but, in the opinion of other experts, there was a difference, some preferring the one brand and some the other.

Subsequently to the sale, and up to and including the 28th January, 1853, Gallego and Haxall flour had advanced to $35 per barrel in San Francisco; and between that and the 5th of February the price of both declined to $18 per barrel. On the 5th of February the plaintiffs caused the remainder of the cargo to be sold at public auction, according to their notice to the defendant, for his account, and at a great reduction of price. The verdict does not find any fact to impugn the fairness of this sale. Before this suit was commenced, Flint, Peabody, & Co., assigned their interest in this suit to the plaintiffs, of which the defendant had notice.

The verdict is silent in reference to the negotiations that preceded the contract, and does not inform us whether the

cargo was at any time visible to the defendant; nor does it discriminate with exactness the qualities of Haxall and Gallego flour, or affirm that there is any specific difference between them.

It is evident, from the verdict, that the error in the description of the cargo did not bear on the substance, or on any substantial quality of the subject of the sale. The subject of the sale was a cargo of flour of about two thousand barrels, on board of a vessel lying at a wharf in the city; of a quality to be ascertained by an inspection; and from that inspection, and not from the brand, the price was to be ascertained. The brands Haxall and Gallego are understood to refer to different mills in Richmond, Virginia, at which flour is manufactured. The verdict sufficiently determines that the difference between them in the market of San Francisco is inappreciable, at least by the mass of purchasers and consumers. The case clearly does not belong to that class in which the subject-matter of the contract was of a nature wholly different from that concerning which the parties to the contract made their engagements. The brand on the exterior of the barrels of flour was certainly not of the substance of the contract. (Young *v.* Cole, 3 Bing. N. C., 724; Gompertz *v.* Bartlett, 2 Ell. and B., 19 Verm. R., 202.)

The defendant does not resist the fulfilment of his agreement for any fraud; nor does the verdict impute any *mala fides* to the plaintiffs.

The case rests upon these facts. There was a sale of a cargo of flour, at a price dependent upon the fact whether the component parts inspected superfine or bad, which was described as of one brand, but which proved to be of another. There was no material difference in the credit of the brands, and the market price of the flour was but little affected by the question whether the brand was of the one or the other mill.

A portion of the flour has been delivered to, and paid for, and consumed by, the defendant. He made no offer to return this flour. The flour remained in the Ork from the 13th of January till the 31st of January, subject to the exigencies of the contract. During that period, there was no complaint on the part of the defendant. From the 28th of January till the 5th of February, when the refusal to accept the remainder of the flour and the sale of it on account took place, the price of flour was steadily declining.

It may be admitted that the description of the flour as Haxall imported a warranty that it was manufactured at mills which used that brand; and that the purchaser would have been entitled to recover the amount of difference in the value of that and an inferior brand. (Powell *v.* Horton, 2 Bing. N. C., 668; Henshaw *v.* Robbins, 9 Met., 83.)

But it cannot be admitted that the purchaser was entitled to abandon this contract.

In the note to Cutter v. Powell, in Smith's Leading Cases, the annotator says: "It is settled, by Street v. Blay, and Poulton v. Lattimore, where an article is warranted, and the warranty is not complied with, the vendee has three courses, any one of which he may pursue. 1. He may refuse to receive the article at all. 2. He may receive it, and bring a cross action for the breach of the warranty. 3. He may, without bringing a cross action, use the breach of warranty in reduction of damages in an action brought by the vendor for the price." The annotator proceeds to say, "that it was once thought, and, indeed, laid down by Lord Eldon, in Curtis v. Hanney, 3 Esp., 83, that he might, on discovering the breach of warranty, rescind the contract, return the chattel, and, if he had paid the price, recover it back. This doctrine, which was opposed to Weston v. Downes, Doug., 23, is overruled by Street v. Blay, 2 B. and Adol., and Gompertz v. Denton, 1 C. and Mee., 205; and it is clear that, though the non-compliance with the warranty will justify him in refusing to receive the chattel, it will not justify him in returning it, and suing to recover back the price."

The second and third propositions of this learned author are indisputable, and have received the sanction of this court. Thornton v. Wynn, 12 Wheat., 183, as modified by Withers v. Greene, 9 How. S. C. R., 213. The first proposition, concerning the right of the purchaser to reject the article because it varies from the warranty, is an open question. In Dawson v. Collins, 10 C. B. R., 527, (70 E. C. L. R.,) the judges dissent from it. The Chief Justice expressed his favor for the conclusion, "that the buyer has no right to repudiate the article," because it did not correspond to the warranty; and Cresswell, Justice, said, "Where the rule is of an individual and specific thing, the vendee can only defend himself, altogether, against an action for not accepting it, if the thing be utterly worthless, as in Poulton and Lattimore; or, in part, by giving the breach of warranty in evidence in reduction of damages." And this corresponds with the conclusions of this court in the case of Thornton v. Wynn, 12 Wheat., 183, where very similar language is used.

But while the first proposition of the note in the Leading Cases is a matter of dispute, there is none in respect to the conclusion that the purchaser who has received and used the article, and derived a benefit from it, cannot then rescind the contract. This principle is stated in Hunt v. Silk, 5 East., 449, in which Lord Ellenborough says: "Where a contract is to

be rescinded at all, it must be rescinded *in toto*, and the parties put *in statu quo.*" And, "if the plaintiff might occupy the premises two days beyond the time when the repairs were to have been done and the lease executed, and yet rescind the contract, why might he not rescind it after a twelvemonth on the same account? This objection cannot be gotten rid of. The parties cannot be put *in statu quo.*" In Perley *v.* Balch, 23 Pick., the same principle is applied to contracts of sale of chattels. The court say: "The purchaser cannot rescind the contract, and yet retain any portion of the consideration. The only exception is, where the property is entirely worthless to both parties. The purchasers cannot derive any benefit from the purchase, and yet rescind the contract. It must be nullified *in toto* or not at all. It cannot be rescinded in part and enforced in part." In Burnett *v.* Stanton, 2 Ala. R., 183, the court say: "A contract cannot be rescinded without mutual consent, when circumstances have been so altered by a part execution that the parties cannot be put *in statu quo;* for if it be rescinded at all, it must be rescinded *in toto.*" To the same effect is Christy *v.* Cummins, 3 McLean R., 386; 2 Hill N. Y. R., 288, per C. J. Nelson; Kase *v.* John, 10 Watts, 107. In Thornton *v.* Wynn, 12 Wheat., 183, this court say: "That if the sale of a chattel be absolute, and there be no subsequent agreement or consent of the vendor to take back the article, the contract remains open, and the vendee is put to his action upon the warranty, unless it be proved that the vendor knew of the unsoundness of the article, and the vendee tendered a return in a reasonable time."

If the verdict had found that the defendant had sustained any damage from the difference in the brands on the flour, the price would have been diminished accordingly; and so the defendant might have been indemnified upon an action commenced by himself, alleging a breach of the contract. But, without considering whether he could refuse to accept any portion of the flour for the variance from the letter of his contract, we decide that he lost this power when he applied to have, paid for, and sold the parcels, on the 25th and 31st of January, 1853.

The defendant pleaded that the several causes of action in the complaint mentioned did not accrue within two years before the commencement of the suit. The code of California provides, that "an action upon any contract, obligation, or liability, founded upon an instrument of writing, except those mentioned in a preceding section, shall be brought within three years, and within two years if founded upon a contract, obligation, or liability, not in writing, except in actions on an open

account, for goods, wares, and merchandises, and for any article charged in a store account. The plea of the defendant does not allege that the cause of action is founded upon a contract, obligation, or liability, not in writing, nor show that it falls within the limitation of two years, as pleaded. The complaint is framed so as to admit evidence of a contract in writing quite as well as an oral contract, and the evidence shows this action is founded on a written contract. The plea should have contained an averment that the cause of action was not in writing, with such other averments as to show that the bar of the statute pleaded was applicable.

A plea cannot be sustained, which rests for its validity upon a supposed state of facts which may not exist. The plea must be an answer to any case which may be legally established under the declaration. Winston *v.* The Trustees' University, &c., &c., 1 Ala. R., 124.

It was objected that the proof shows that the assignment by Flint, Peabody, & Co., was made to the plaintiffs in the suit, and that the declaration alleges that they assigned their interest in the claim to John Bertram, one of the plaintiffs. The code of California requires that actions shall be prosecuted in the name of the real party in interest, and that all parties having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs. The plaintiffs are shown to be the parties jointly interested in the subject of the action, and in the claim for relief. It is quite immaterial in what proportions they may be concerned. Their case is substantially established, when their joint interest is shown, and the error in respect to the degree of the interest of the several parties is not such a variance as will be considered.

Judgment affirmed.