GEORGE F. TOWER, Respondent, v. GUSTAVE A. PAULY, Appellant.

### St. Louis Court of Appeals, November 9, 1892.

1. **Sales:** REASONABLE TIME FOR RESCISSION. To rescind a contract of sale for the breach of a warranty, the vendee must act within a reasonable time.

2. ———: ———: LAW AND FACT. What is a reasonable time is ordinarily a question of fact; but the time taken may be, and under the evidence in this cause it is *held* to be, unreasonable as a matter of law.

*Per Thompson, J.:*

3. **Practice, Trial:** INSTRUCTION OF NONSUIT. An instruction of nonsuit reaches any matter which operates to defeat the action, whether suggested to or considered by the court at the time, or not.

4. **Sales:** CONTRACT FOR FURNACE IN A DWELLING. An agreement to furnish and erect a furnace in a dwelling, when the same is to be attached to the premises as a part of the building, is not a contract of sale, but a building contract.

5. ———: RESCISSION OF CONTRACT. To rescind a contract of sale the vendee must return or tender back *in toto* what he has received under it, so as to place the vendor *in statu quo;* when the vendee disables himself from so doing, he cannot rescind. And when the contract is one for a furnace, with which the vendor furnishes bricks in which to inclose it on the premises of the vendee, not only the furnace, but the bricks also, must be returned or tendered for the purposes of a rescission of the contract.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED (BIGGS, J., *dissenting*).

*Lubke & Muench,* for appellant.

(1) The trial court erred in refusing the defendant's instruction that plaintiff was not entitled to

recover on the pleadings and evidence. The action is predicated distinctly upon a rescission of the contract of sale for breach of warranty. This right does not exist unless the whole of the property sold is restored. It is a direct condition that this shall be done; otherwise there can be no rescission. If any part of the property is retained by the buyer, and this has any value to him or to the seller, the buyer's right to rescind is gone. Here the plaintiff retained the brick and used them for his new heater; he confessed they were of value, when he testified that he expected to pay defendant for them. *Kimball v. Cunningham*, 4 Mass. 502; *Connor v. Henderson*, 15 Mass. 320; *Perley v. Balch*, 23 Pick. 283; *Morse v. Brackett*, 98 Mass. 207; *Dorr v. Fisher*, 1 Cush. 274. (2) The trial court erred in refusing defendant's instruction, numbered 3. In no event can a purchaser who has received and paid for the article, rescind the sale and sue for the purchase price unless he makes his election and tenders the article back within a reasonable time. *Branson v. Turner*, 77 Mo. 489. Two and one-half months is *prima facie* unreasonable. *Johnson v. Whitman*, 20 Mo. App. 102. The buyer may retain the articles only long enough to give them a fair examination; otherwise his right to return them is gone. *Wedell v. Whitney*, 23 Wis. 55; *Merrill v. Nightingale*, 39 Wis. 247; *Fisk v. Tank*, 12 Wis. 276. It is the duty of the trial court to give correct instructions, although the judge is also performing the functions of the jury. *St. Louis, etc., Co. v. Buel*, 8 Mo. App. 594.

*Edward S. Robert*, for respondent.

(1) In *Branson v. Turner*, 77 Mo. 489, the supreme court lays down the rule governing this case, as follows: Where there is a breach of warranty the

vendee may rescind the contract and return in a reasonable time the thing sold; or may retain it and recover damages .for the breach. Where the purchase price has not been paid he may defend as to the whole if he has rescinded, or *pro tanto* if he has retained the chattel. The rule as stated has been followed in *Johnson v. Agr'l Co.*, 20 Mo. App. 100; *Calhoun v. Paule*, 26 Mo. App. 274; *Warner v. O'Brien*, 40 Mo. App. 483; *Implement Co. v. Leonard*, 40 Mo. App. 477; *Hayner v. Churchill*, 29 Mo. App. 676; *Water Co. v. Bathe*, 41 Mo. App. 285; *Armstrong v. Johnson*, 41 Mo. App. 254; *Brown v. Weldon*, 27 Mo. App. 251, affirmed in 99 Mo. 564. (2) Where a machine is warranted to do specific work, the purchaser is entitled to a reasonable time to test it. *Implement Co. v. Leonard*, 40 Mo. App. 477, and cases cited.

THOMPSON, J.—In this action the plaintiff seeks to recover of the defendant the sum of $425, the same being the purchase price of a hot-air furnace paid by the plaintiff to the defendant, which furnace the defendant had furnished to the plaintiff and had erected in his house under a contract of warranty hereafter stated. The case was tried in the circuit court without a jury, and there was a verdict and judgment for the plaintiff in the sum of $430.26, from which the defendant prosecutes this appeal.

The petition states, in substance, that the defendant entered into a contract with the plaintiff on December 1, 1889, whereby the defendant agreed "to *erect and build* in a certain dwelling owned by the plaintiff * * * a Reynolds furnace of a size and pattern sufficient to heat such dwelling to a temperature of seventy degrees when the thermometer stood at zero out of doors;" that, in consideration of this agreement, the plaintiff agreed to pay the defendant for the

furnace the sum of $425; that said warranty was reduced to writing in words and figures as follows:

"St. Louis, Mo., January 1, 1890.

"*George F. Tower bought of G. A. Pauly:*

"* * * December, 1890, one Reynolds furnace, $425.

"Paid, February 3, 1890.    G. A. Pauly.

"I herewith guarantee the above furnace to warm your house to seventy degrees when the thermometer is zero, and I will further promise that, if anything about the furnace is not understood, and any alteration that may be necessary to accomplish the above (heating in zero weather) will be done free of charge.

"G. A. Pauly."

The petition then avers that the defendant "did *build* in said house a Reynolds furnace, but that the same was insufficient and incapable of heating said dwelling to seventy degrees in zero weather, or of heating the same to such a temperature as to make such house habitable in temperate winter weather, and that the same wholly failed so to heat said house, and was worthless to plaintiff." It then avers that, on the third of February, 1890, the plaintiff paid to the defendant the said $425 as he had agreed to do; that, before the institution of this suit, plaintiff demanded of the defendant that said furnace should be so altered that the same would heat said dwelling, as defendant had agreed it should do, but that the defendant failed and refused to so alter the same, whereupon the plaintiff, within a reasonable time, tendered said furnace back to the defendant, and is still ready and willing to return the same; and that, by reason of the breach of the said contract by the defendant, plaintiff has been damaged in the sum of $425; "wherefore, plaintiff prays judgment against the defendant for $425, with interest thereon at the rate of six per cent. per annum

from the third day of February, 1890, and for his costs in this behalf expended."

The answer was a general denial merely.

It is perceived that the foregoing petition proceeds upon the theory of a *sale of a chattel* with an express warranty, and of a rescission by the vendee for a breach of the warranty, exercised within a reasonable time. The late supreme court commission in the case of *Branson v. Turner*, 77 Mo. 489, changed our law on the subject of sales, so as to introduce this principle, which, contrary to the law of England, is the law of some of the American states, that, where there is a breach of warranty, the vendee may rescind the contract and return, in a reasonable time, the thing sold; or he may retain it and recover damages for the breach; and, where the purchase price has not been paid, he may defend as to the whole if he has rescinded the contract, or *pro tanto*, if he has retained the chattel. The petition, it is perceived, seeks to recover the entire purchase price paid for the furnace, with interest from date of payment, on the theory of a rescission by the plaintiff within a reasonable time after the defendant had, in pursuance of his undertaking, endeavored to make the furnace heat the plaintiff's house to a temperature of seventy degrees when the thermometer was at zero on the outside.

Such being the theory of the action, the plaintiff introduced evidence tending to show that, in the autumn of 1889, he, through his father, entered into an oral agreement with the defendant for the construction of the furnace in a house which the plaintiff was then building; that this agreement embodied the warranty which afterwards was reduced to writing, as above stated; that in pursuance of this agreement the defendant, in the autumn of 1889, set up the furnace in the house and prepared it for use; that, owing to the fact

that the plaintiff's wife had undergone a serious
surgical operation, he found that he could not move
into the house that winter, so as to be able to test the
furnace, and so informed the defendant; that, on the
third day of February, 1890, he settled with the defend-
ant and paid him the $425, which was the agreed con-
sideration money for erecting the furnace, and received
the defendant's receipt, to which was appended the
guaranty which had been orally agreed upon, as previ-
ously stated,—which guaranty is above quoted.  Work-
men were employed in finishing the interior of the
house in the winter of 1889–90, and they several times
built fires in the furnace, which practice the plaintiff,
on being informed of it, ordered to be discontinued,
owing to the danger that the house might thereby take
fire.   The plaintiff did not move into the house until
the following autumn; that is, until the autumn of 1890.
When the cold weather came on, he began to use the
furnace, but found it utterly insufficient to heat the
house according to the guaranty.   He continued to use
the furnace all winter, and his evidence is to the effect
that it would not raise the heat in the house to a higher
temperature than sixty degrees Fahrenheit, even when
the temperature was ten degrees above zero out of doors,
which would leave a deficiency of twenty degrees between
the heating power of the furnace as warranted and
its actual heating power.   The plaintiff was obliged to
keep two grate fires burning in his house, one downstairs
and one upstairs in the room occupied by his wife and
child, and even with these aids the house was not ade-
quately heated.   He sent for the defendant several
times to come and remedy the deficiency of the furnace
in accordance with his contract, and the defendant
came but failed to correct the deficiency, and finally
offered to put in an auxiliary furnace, which offer the
plaintiff declined for the reason that it would entail

additional consumption of coal. The record contains some rather vague testimony on behalf of the plaintiff, tending to show that the plaintiff tendered the furnace back to the defendant in the spring of 1891, after he had thus used it during the entire winter season, the same being the second winter season which had elapsed since the furnace was erected in the house. Other testimony is to the substantial effect that no definite tender was made until July, 1891, and some of the testimony for the defendant might have authorized a jury to conclude that the plaintiff did not make a definite tender of the furnace until he had concluded to change his heating arrangements by the substitution of a hot-water furnace. For the purpose of disposing of this appeal, we shall assume that there was substantial evidence tending to show that the plaintiff tendered back the furnace to the defendant in the spring of 1891, as claimed in the printed argument submitted to us by his counsel, and that this tender was made in such a form as would have produced a good rescission in law, if other circumstances had concurred satisfying the requirements of the law on the subject of the rescission of contracts for the sale of goods. The evidence further shows that the plaintiff detached and removed from its place the furnace which had been erected by the defendant, and substituted a hot-water furnace, and that, in making this substitution, a workman employed to do the brick-work used all the brick which had been used in erecting the furnace erected by the defendant, amounting to twenty-two hundred. The plaintiff gave evidence tending to show that the use of this brick had been unauthorized by him; but this seems to have been immaterial, as the workman was doing the work on the plaintiff's premises, and must have been under his power and control, if not under his immediate direction.

I.   This statement of the facts is sufficient to enable us to consider the assignments of error made by the defendant on this appeal.   The first is that the court erred in refusing to instruct the jury at the close of the case that, on the pleadings and evidence, the plaintiff was not entitled to recover.   I am of opinion that this assignment of error is well taken.   It is perceived from the petition, as already recited, that it does not count upon a contract for the mere sale of a chattel; but counts upon a contract by which the defendant agreed "to erect and build" in the plaintiff's dwelling-house a certain furnace.   It sufficiently appears from the evidence that this furnace was erected in the house by means of bricks, and by means of attachments; and, though the evidence as to the manner in which it was erected and attached is somewhat blind, the testimony makes it sufficiently plain to me that this was not a contract for the sale of a chattel at all, but that it was a *building contract;* that is, a contract to do certain work toward the completion of a dwelling-house, by erecting a furnace therein, which furnace, when erected, would become a part of the realty.   The law applicable to the rescission of contracts for the sale of chattels can have no application to such a contract, because, from the nature of the case, the thing furnished cannot be restored without waste.   The vendor cannot be put wholly *in statu quo*.

It is true that the parties seem to have tried the case upon the theory, that the contract might be treated as a contract of sale, and the warranty as a mere warranty of the quality of a chattel sold and delivered; and, therefore, there is, of course, danger in making our decision turn upon this point alone.   But my opinion is that the instruction prayed for reaches to any matter that operates to defeat the action, whether it was thought of by the opposing counsel or by the judge

who tried the case, or not. I am further of the opinion that, inasmuch as the petition describes not a contract under which a chattel was sold and delivered with a warranty, but a contract under which a furnace was erected and built, it does not describe the sale of a chattel at all, but describes a building contract, which contract, for the reason already suggested, cannot be the subject of a rescission. For this reason I am of the opinion that the petition as framed states no cause of action, which affords an additional and a conclusive reason, why the instruction prayed for ought to have been given.

II. I am also of opinion that, as mere matter of law, stating the evidence most favorably for the plaintiff, the court should have held that the offer to return the furnace had not been made by the plaintiff within the reasonable time required by the rule of law on the subject. That rule is conceded to be that the vendee of a chattel, where there is an express contract of warranty, or where it is sold by sample, is entitled to a reasonable time after receiving it to ascertain whether or not it complies with the warranty, or corresponds with the sample, before making his election to reject it, and rescind the contract of sale by tendering it back to the vendor. Benjamin on Sales [Ben. Ed. 1888] p. 864, and cases cited. It is also unquestionable that the general rule is that what will be a reasonable time will be a question of fact for a jury, and not a mere question of law for the judge. *Doane v. Dunham,* 79 Ill. 131; *Boothby v. Scales,* 27 Wis. 626; *Hickman v. Shimp,* 109 Pa. St. 16; *Stone v. Browning,* 68 N. Y. 604; *Pierson v. Crooks,* 115 N. Y. 539; s. c., 12 Am. St. Rep. 831; *Cohen v. Pemberton,* 53 Conn. 221; s. c., 55 Am. Rep. 101. But it is believed that these decisions mean nothing more than that this question must be a question of fact for the jury within certain limits; which limits are

that the evidence, in order to take the question to the jury, must be such that fair-minded men might differ upon the question whether the vendee had acted with reasonable promptness in offering to restore the chattel to the vendor. We had this principle in mind when we decided the case of *Johnson v. Agricultural Co.*, 20 Mo. App. 100, in which this language was used at page 102: "It is obvious that the time, during which the vendee may choose to retain the article before tendering it back, in the absence of any circumstances tending to excuse the delay, may be so short that the court may declare it to be a reasonable time, or so long that the court may declare it to be an unreasonable time, as matter of law;" and we inclined to the conclusion in that case (but without deciding the question, as it had not been passed upon in the court below), that a delay of two months and a half in rejecting an agricultural machine was an unreasonable delay as matter of law.

An examination of many of the decisions which bear upon this question will show that, while the purchaser is allowed a reasonable time to make an examination of the goods for the purpose of seeing whether they comply with the warranty or correspond with the sample, yet, when this reasonable time has elapsed, if he elects to rescind, he must act promptly. I will quote a few judicial expressions on this subject. "It is," said ANDREWS, J., "the duty of a purchaser to act promptly in making an examination of goods sent upon his order, to see whether they comply therewith, and to give prompt notice to the vendor of their rejection, if found defective, if he intends to avail himself of that remedy." *Pierson v. Crooks*, 115 N. Y. 539, 551; s. c., 12 Am. St. Rep. 831, 838. The court in this case refer to several old cases, where this principle was laid down in similar language. Thus, in *Fisher v. Samuda*, 1 Camp. 190, 198, it was

said by Lord ELLENBOROUGH that "it was the duty of the purchaser of any commodity, immediately on discovering that it was not according to order and unfit for the purpose for which it was intended, to return it to the vendor, or to give him notice to take it back." Similar language was used by the same judge in *Hopkins v. Appleby*, 1 Stark. 477. A similar principle was acted upon in *Reed v. Randall*, 29 N. Y. 358, 363, where WRIGHT, J., speaking for the court, stated the principle thus: "The principle that, when the contract of sale is executory, the remedy of the purchaser to recover damages on the ground that the article furnished does not correspond with the contract, will not survive an acceptance and retention of the property, after opportunity to ascertain the defect, without notifying the vendor, is well supported by authority." In another case in New York the doctrine is stated thus in the opinion of the court by ALLEN, J.: "The law not only requires a disaffirmance of a contract at the earliest practicable moment after discovery of the cheat, but a return of all that has been received under it, and a restoration of the other party to the condition in which he stood before the contract was made." *Cobb v. Hatfield*, 46 N. Y. 537. This language was reaffirmed in the opinion of RUGER, C. J., in *Baird v. New York*, 96 N. Y. 598. In the case of *Pierson v. Crooks*, already quoted from, the following observation is added by ANDREWS, J.: "Indeed, it stands upon the most obvious justice and equity, that the seller should be apprised promptly if there is any objection, and the vendee intends to reject the goods, so that he may retake possession or resell the goods and save himself as far as practicable from loss. But the vendee has a reasonable time for examination and to give notice, and what is a reasonable time is usually a question of fact and not of law, to be determined by

the jury upon all the circumstances, including as well the situation and liability of injury to the vendor from delay, as the convenience and necessities of the vendee.'' 115 N. Y. 551.

Some of the early cases afford precedents which justify the conclusion that the delay, which, on the most favorable interpretation of the evidence, the plaintiff allowed to occur before offering to return the furnace, was an unreasonable delay as matter of law. In *Fisher v. Samuda*, 1 Camp. 190, 199, the subject of the sale was beer, to be delivered for shipment to Gibraltar in the following autumn. It was discovered in July to be of bad quality, and unfit for the purpose intended, but the earliest notice of this fact given to the vendors was in December. Lord ELLENBOROUGH said that ''under these circumstances the plaintiff must be presumed to have assented to its being of good quality, and to have acquiesced in the due performance of the contract on the part of the defendants.'' In *Milnor v. Tucker*, 1 Car. & P. 15, a person contracted to supply a chandelier sufficient to light a certain room. The purchaser kept the chandelier six months and then returned it. It was held that he must pay for it, although it was not according to the contract.

But we need not extend precedents upon this question, for it must be conceded that each case must rest largely upon its own facts. In the present case the question is to be determined by a contract which not only embodied the warranty already recited, but which gave to the defendant a reasonable opportunity to make any alteration which might be necessary to cause the furnace to heat according to warranty. This is our construction of the language of the warranty. It was a warranty that the furnace would heat the house to seventy degrees, when a thermometer was at zero outside. It was a further obligation on the part of the

defendant to do, free of charge, anything necessary to make the furnace accomplish the above warranty; and fairly construed,—and such appears from the evidence to have been the construction of both parties,—it must be taken to have been an agreement that he should have such an opportunity before any right to reject the furnace could accrue to the plaintiff. The reasonable time thus allowed the plaintiff by the rule of law already stated was such time as might be necessary to enable him, acting properly, to ascertain whether the furnace complied with the warranty, to which must be added sufficient time to enable the defendant to make such alterations as might enable it to comply with the warranty. There could not possibly be any room for fair-minded men to doubt that two winter seasons were not reasonably necessary for this purpose. The excuse made in argument for not rejecting the furnace immediately during the winter of 1890–91, upon discovering its insufficiency, is that the plaintiff could not be expected to attempt to change the heating apparatus in his dwelling-house in mid-winter. But this wholly fails to account for the failure to inspect it and ascertain its heating capacity during the preceding winter; for it must be remembered that it was erected in the autumn of 1889, and that it was in fact fired up several times during that winter by the workmen, and that payment for it was made by the plaintiff to the defendant in pursuance of the contract on the third of February, 1890. The evidence does not disclose any reason whatever, why the heating capacity of the furnace could not have been tested between the date of its erection and the date when the plaintiff thus paid the purchase price of it to the defendant. His family was not in the house then; it does not appear that the house was not closed, or that any obstacle stood in the way of a complete testing of this heating capacity. In

the absence of any excuse for not thus testing it, it must be concluded that the delay which was allowed to elapse was unreasonable as matter of law, and that for this reason the court should have sustained the instruction for a nonsuit.

III.  But there is another reason which is even more fatal to the right of the plaintiff to recover on the theory on which this action is brought, and that is that, before the action was brought, he disabled himself from returning the furnace in the condition in which it was furnished to him, even if it could be supposed that it could be treated as a mere chattel sold and delivered.  Twenty-two hundred brick, all that were used in the structure, were consumed by the plaintiff in erecting the furnace which he substituted in place of this one.  Whether this was done by the workman without his orders is totally immaterial, for he had control over the workman, and the power to prevent him from using the brick if he had seen fit. This brings the case within a principle which is applicable not only to the rescission of contracts for the sale of chattels, but also to the rescission of every other species of contract, and that is that there can be no rescission, unless the thing received is tendered back or restored *in toto*, and the vendor can be put *in statu quo*.  I shall quote a few judicial expressions on this point.  Lord ELLENBOROUGH, in *Hunt v. Silk*, 5 East, 449, says:  "Where a contract is to be rescinded at all, it must be rescinded *in toto*, and the parties put *in statu quo*."  He also said, speaking with reference to the case which he had under consideration:  "If the plaintiff might occupy the premises two days beyond the time when the repairs were to have been done and the lease executed, and yet rescind the contract, why might he not rescind it after a twelve-month on the same account? This objection cannot be gotten rid of.  The parties

cannot be put *in statu quo.*" In like manner, the supreme judicial court of Massachusetts says in *Perley v. Balch*, 23 Pick. 283: "He [the purchaser] cannot rescind the contract, and yet retain any portion of the consideration. The only exception is, where the property is entirely worthless to both parties. * * * The purchaser cannot derive any benefit from the purchase and yet rescind the contract. It must be nullified *in toto*, or not at all." In like manner, in *Voorhees v. Earl*, 2 Hill (N. Y.) 288, 293, s. c., 38 Am. Dec. 588, 595, it is said by Cowan, J., speaking for the court: "Where one party is desirous of rescinding a contract by reason of the other's default, he must do so *in toto;* and cannot hold on to any part. He must put the other party *in statu quo* by an entire surrender of possession, and of everything he has obtained under the contract, or he cannot recover the consideration in an action for money had and received." So, the supreme court of Alabama in *Barnett v. Stanton*, 2 Ala. 183, says: "A contract cannot be rescinded, without mutual consent, where circumstances have been so altered by a past execution, that the parties cannot be put *in statu quo;* for if it be rescinded at all it must be rescinded *in toto.*" Quoting these and other authorities, the supreme court of the United States, speaking through Mr. Justice Campbell, said that, while there is a dispute as to the right of rescission in cases like that before us, yet "there is none in respect to the conclusion that the purchaser who has received and used the article, and derived a benefit from it, cannot then rescind the contract." *Lyon v. Bertram*, 20 How. 149, 154.

Applying these principles to the undisputed facts in the case before us, it is perceived, following the language last quoted, that the plaintiff received and used the article in question, and derived a benefit from

it during an entire winter, after ample time had elapsed within which he might have tested it and ascertained its sufficiency under the warranty. It is also seen that he has converted to his own use and still retains a portion of the article delivered to him by the defendant (treating it as a chattel), namely, the twenty-two hundred bricks with which the furnace was erected in his dwelling. He has, therefore, disabled himself from restoring the article purchased *in toto*, and from putting the defendant *in statu quo*. Another observation, which may be added to this, makes it clear that the doctrine of the rescission of a contract of sale cannot be applied to a contract by which a furnace is fitted into a dwelling-house at the expense of very considerable labor. This labor represents a value, and this value cannot be restored by merely tearing the furnace from its attachments and handing it back to the builder who has erected it.

These observations make it clear that the plaintiff, in bringing his action to recover the purchase price as money had and received by the defendant upon a consideration which has failed, has mistaken the theory of his action; that, by electing to retain the furnace as long as he did, and by disabling himself from restoring it in its entirety, he waived his right of rescission, and confined himself to an action for a breach of the warranty. I am, therefore, clearly of opinion that the petition does not state, nor does the evidence prove, any right of recovery upon the theory of a rescission of a contract of sale; and that for this reason the judgment of the circuit court should be reversed, and the cause remanded. The plaintiff may, if so advised, amend his petition and proceed on the warranty. Judge ROMBAUER concurs in the result. Judge BIGGS dissents.

ROMBAUER, P. J. *(concurring).*—I concur in reversing the judgment on the ground that on the evidence the court should have declared, as a matterof law, that plaintiff did not exercise his right of rescission within a reasonable time. Mere inconvenience of making a test may be evidence of the fact, that, although a considerable period of time had elapsed, yet there was not such a complete acceptance of the chattel as would bar a recourse on the warranty. But mere inconvenience of examination can, in no case, extend the period within which the right of rescission may be exercised for years, giving to the vendor nothing for the intermediate use of the chattel. What we said in *Henry Gaus Mfg. Co. v. Magee,* 42 Mo. App. 314, 315, is in point on that head.

I doubt whether we are justified in reversing the judgment on the ground that the furnace in question was not a chattel, although the evidence points strongly in that direction. That the court treated the furnace in question as a chattel, is not assigned for error, nor could it be thus assigned since both parties tried the case on that theory. I also doubt whether the mere fact, that plaintiff could not on the day of trial return the labor and brick which defendant used in constructing the furnace, is necessarily fatal to his recovery. Those items were capable of separation from the furnace as independent items. The plaintiff had tendered the entire furnace, inclusive of brick, to the defendant prior to the institution of the suit, and the court, as a computation shows, allowed to the defendant in its judgment the price of labor and brick as per his own valuation, thus putting him *in statu quo* as to those items. But as to the wear of the furnace, and its depreciation in value, by its use for two winters, the court could not and did not put the defendant *in statu quo.*

The only thing that can be done under such circumstances is to remit the plaintiff to his action on the warranty.