GALLAIS, Respondent, v. TRINIDAD ASPHALT MANUFACTURING COMPANY, Appellant.

St. Louis Court of Appeals, November 18, 1907.

1. **PRACTICE: Names: Variance.** Where a contract was made with S. Gallais and he sued upon it by that name, his action could not be defeated on the ground that he testified on the trial that his name was John B. S. Gallais.

2. **WARRANTY: Evidence: Offer to Repair.** Defendant agreed to construct a floor for the plaintiff and warranted that it would. be waterproof for a period of five years. Plaintiff sued for breach of the warranty, showing that the floor became cracked

and leaked. Defendant offered to prove that he had offered to repair the floor and make it waterproof but plaintiff refused to permit it. *Held*, the evidence was properly excluded because such offer to repair did not relieve the defendant of its liability for breach of the warranty.

3. ———: Instruction: Knowledge of Warrantor. In such action an instruction authorizing a verdict for plaintiff, which failed to submit the question whether the defendant had knowledge of the use to which the floor would be put, was not error, where the defense interposed by the answer was not that the floor was put to an improper use, but that it was rendered defective by specific acts of negligence on the part of the plaintiff.

4. ———: ———: Measure of Damages. It was proper in such case to submit to the jury as an element of damage the destruction of plaintiff's salt in the basement caused by the leaking of the water through the floor, without requiring a finding that the defendant knew to what use the basement was to be put, there being no evidence that it was put to an improper or unreasonable use.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale*, Judge.

AFFIRMED.

*W. B. Homer* for appellant.

(1) The suit should have been brought in the name of John B. S. Gallias. Having failed in this the non-suit instruction should have been given. King v. Clark, 7 Mo. 269; State v. Smith, 31 Mo. 120; Tower v. Pauley, 51 Mo. App. 75. (2) Instruction No. 1 was also defective in that it failed to submit the question whether the appellant had knowledge of the use to which the floor was to be put. Hight v. Dakon, 126 Mass. 10; Morris v. Fertilizer Co., 64 Fed. 55. (3) The court should not have submitted to the jury_ at all the question of injury to the salt, for the reasons (1) there was no evidence that the appellant knew that any use was to be made of the basement; (2) that respondent could have protected itself from injury at trifling expense, or reasonable

exertion, whereas, in fact, he permitted the salt to be destroyed without any effort to protect same from destruction. Douglas v. Stevens, 18 Mo. 366; State ex rel. v. Powell, 44 Mo. 436; Haysler v. Owen, 61 Mo. 270. (4) The basis upon which the damages should have been computed, if respondent was damaged, was the cost of repairing the floor. Tower v. Pauly, 67 Mo. App. 632; Fisher v. Goebel, 40 Mo. 475.

*W. B. & Ford W. Thompson* for respondent.

The measure of damages on a breach of a warranty of this character is the difference in value between the floor as warranted (in the absence of countervailing evidence, the purchase price) and it was delivered (in this case worthless). Brown v. Johnson, 66 Mo. App. 63; Layson v. Wilson, 37 Mo. App. 636; Moore v. Emmerson, 63 Mo. App. 137; Tower v. Pauly, 67 Mo. App. 632.

STATEMENT.—Plaintiff, in March, 1902, had in course of erection, a building at Twenty-first and Walnut streets, in the city of St. Louis, to be used when completed in his business of manufacturing ice cream. A. W. Black was the architect and also plaintiff's agent to let contracts for work to be done on the building. One of defendant's solicitors had several interviews with Black with a view of securing a contract to lay the first floor of the building, and inspected the specifications in respect to laying said floor and, on March 31, 1902, as he was authorized to do, submitted to Black the following proposition:

"St. Louis, Mo., March 31, 1902.
"Mr. W. A. Black,

"Twenty-first and Clark Ave., City.

"Dear Sir;—Referring to our proposition of March 27th, please disregard same. We hereby substitute the following proposition: to lay 1¼ inch asphalt mastic floor over wood, in first story building for S. Gallais,

Twenty-first and Walnut streets; first laying tarred felt and burlap, to insulate the mastic from the wood, aggregating sixteen squares, in accordance with plans and specifications, for the sum of $326.80 payable net cash on completion of the work.

"We will guarantee floor to be absolutely waterproof for a period of five years from date of completion of the work, providing the foundation of said floor remains intact.

"We will coat brick wall four feet up from floor with hot pitch, 4x164, aggregating 6½ squares, in first floor of above mentioned building, for the sum of $9.80 payable net cash on completion of the work.

"Very truly yours,

"TRINIDAD ASPHALT MFG. CO."

The proposition was accepted by Black for plaintiff, and in due time defendant company proceeded to lay the floor. Following are the specifications for the floor.

"*Asphalt Floors*: Lay in the first story, one mastic floor, to cover the entire surface between brick walls, except where elevators and drains prevent.

"This work to be done with Diamond T. Asphalt, Mastic, as laid by the Trinidad Asphalt Company: Said Composition to be 1¼ inches thick, carefully laid, to drain to outlets, be absolutely water proof, and guaranteed not to leak for a term of five years.

"Carefully paint all brick walls, from the first floor up to a line exactly four feet above the finished floor, with hot pitch.

"The iron columns to be painted to match."

There was a basement under the entire first floor in which plaintiff constructed a bin to contain three carloads of salt. Plaintiff also manufactured ice cream in the basement. The machinery for making ice cream was propelled by electric power. Before the completion of the building, plaintiff stored three carloads of salt in the basement. In a short time after plaintiff com-

menced to manufacture ice cream in the building, water percolated through the floor on the salt, causing it to melt. Defendant was notified of the trouble and made one or two ineffectual efforts to stop the leaks. The suit is for a breach of the warranty to make the floor waterproof for five years. The damages are laid at the contract price of the floor and sixty dollars for loss of ten tons of salt caused by the drippings from the floor. The answer is a general denial and the following new matter as constituting a defense:

"And for another and further answer this defendant states that any loss or injury which the plaintiff may have suffered was caused by his own negligence and by his careless and abusive treatment and use of the floor referred to in the petition and contract, in that the plaintiff threw great pieces of ice on the floor, and in such a way as to break the floor, and in chopping ice on the floor plaintiff greatly injured, destroyed and weakened the said floor, and that plaintiff permitted large amounts of ice to remain on the floor, causing the temperature of the floor to decline to such a degree as to make cracks in the same, and plaintiff abused and injured said floor by throwing and permitting to fall on said floor, great ice cream tanks which caused the floor to be cracked, broken and to wear away. And further defendant says that plaintiff did not make a reasonable and proper use of said floor.

"And for a further defense this defendant says that it has at all times been ready and willing to repair any leaks which may exist in said floor and repair and keep the same in perfect condition."

Plaintiff's evidence tends to show the asphalt surface cracked pretty much all over the floor, disintegrated and wore away from sweeping the floor, and water percolated through the cracks and worn places and dripped on the salt and, in fact, all over the basement, causing the loss of about ten tons of salt, worth six dollars per

ton; that defendant undertook to repair the floor by stopping the cracks but the repairs did not prevent the leaking, and plaintiff finally took up all the material defendant had put upon the floor and removed it from the building, and had a new floor of different construction put down. Plaintiff's evidence shows the ice used for freezing cream was stored in the basement, where it was first chopped up by a machine, in pieces about three inches square, and then conveyed by an elevator or hoist to the first floor and there emptied through a chute into barrels and from them packed in the freezers; that the fall of the ice from the chute into the barrels was about four feet, and at times ice overflowed the barrels and dropped upon the floor from the chute and was then taken up by shovels; that the freezers were filled or packed with ice out on a platform and then rolled to the first floor and left there to freeze the cream.

Defendant's evidence tends to show it offered to take up the entire asphalt surface and reconstruct it, but plaintiff refused to permit it to do so; that the ice from the chute did not fall into the barrels but was permitted to fall upon the floor, and the effect of this was to freeze the surfacing and cause it to crack, and the ice falling on it caused it to wear out; that the principal leak was where the ice fell on the floor; that when defendant made repairs the surfacing where the ice fell on the floor was worn down to the planks. Its evidence also tends to show the surfacing was cut and worn by the chines and iron hoops on the barrels which plaintiff rolled over the floor in the process of manufacturing his ice cream.

Plaintiff did not move or cover his salt to protect it from the water. He testified he had no other place to store it, and that it would have been a difficult job to have covered it with tarpaulins. Plaintiff owned an adjoining building in which he had formerly carried on his business. There was a salt bin in the basement of said

building, but it was also full of salt when the leaking began. In regard to protecting the salt, the secretary and treasurer of the defendant company testified: "I called there one day after we had received a complaint, and met Mr. Gallais, and went down in the basement with him and saw where the leaks were occurring, and suggested to him that if he would put something over the salt bin until we could repair those leaks, the water would not get into the salt, and I offered to furnish felts to do it. . . . He was excited and mad and would not listen and I went off and left him." Plaintiff denied defendant ever offered to furnish him anything to cover the salt, but assured him the repairs they were making would stop the leak.

The verdict was for plaintiff for $376.80. A timely motion for new trial was filed which the court overruled, whereupon defendant appealed to this court.

BLAND, P. J.—1. Plaintiff testified his name was John B. S. Gallais. On this evidence defendant moved the court, at the close of plaintiff's case, to instruct the jury that plaintiff could not recover. The refusal of the court to grant this instruction is assigned as error. In support of this point, plaintiff cites in his brief, King v. Clark, 7 Mo. 269; State v. Smith, 31 Mo. 120; and Tower v. Pauly, 51 Mo. App. 75. In King v. Clark the declaration was on a bill of exchange and described it as being drawn by George A. Cook under the name of G. A. Cook. On the trial plaintiff offered in evidence a bill drawn by G. W. Cook. The court held that the variance was material. The authority of this case is very much weakened by Orme v. Shephard, 7 Mo. 606, in which it is held that "a middle letter between the christian and surname is no part of the name, consequently its omission, or a mistake in its description, is immaterial." In State v. Smith, it is held that in an indictment for the fraudulent and felonious uttering, publishing, etc., of

a counterfeit bank note, where said note is described specifically, the proof must conform to the allegations. We do not see the bearing of this case on the point in question.   The case of Tower v. Pauly holds that the instruction of nonsuit reaches any matter which operates to defeat the action, whether suggested to or considered by the court at the time or not.  Supposedly, this case is cited for the reason defendant, at the close of plaintiff's case, offered a demurrer to his evidence without stating the grounds therefor.  Plaintiff was known to defendant as S. Gallais, and defendant contracted with plaintiff under the name of S. Gallais, and for a breach of his contract was sued by S. Gallais, the identical person with whom he made the contract, and is therefore in no position to assert that S. Gallais is somebody else by proving he had other initials in his christian name.  Even though plaintiff's name is John B. S. Gallais, yet if he went by the name of S. Gallais and was known by that name, and not by the name of John B. S. Gallais, he can sue and be sued by the name of S. Gallais, especially could he prosecute a suit in that name against a party with whom he had contracted in the same name.

2.   Defendant offered to prove that it offered to repair the floor and make it waterproof but plaintiff refused to permit the repairs to be made.  The court rejected this evidence.  This ruling is assigned as error. Defendant's guarantee was not that it would construct a waterproof floor and keep the same waterproof by repairs, as needed, for five years, but that it would construct a waterproof floor and guarantee it to remain waterproof for five years.  Repairs were not provided for in the contract, hence defendant had no right to make them without plaintiff's consent, and its offer to make them did not relieve it of its liability for a breach of its warranty.  And for the reason the warranty was a continuing one, the court did not err in ad-

mitting evidence of the condition of the floor at any period within the life of the warranty.

3.   The court gave the following instructions for plaintiff:

"1.   The jury are instructed that under the terms of the contract between the plaintiffs and defendant the defendant agreed to lay a certain asphalt mastic floor over a wooden floor, in the first story of plaintiff's building then under construction at Twenty-first and Walnut streets, in the city of St. Louis, first laying tarred felt and burlap to insulate the mastic from the wood, aggregating sixteen squares, in accordance with plans and specifications, for the sum of $326.80 payable net cash on completion of the work, said asphalt mastic to be 1¼ inches thick; that defendant guaranteed that said floor when so laid by it would be absolutely waterproof for the period of five years from the date of the completion of the work, provided the foundation of the floor remained intact.

"Therefore, if you find and believe from the evidence that the foundation of the floor remained intact and that within the period of five years from the date of completion of said floor by the defendant it became not absolutely waterproof, plaintiff is entitled to recover, unless you find and believe that said floor became not absolutely waterproof because of the use of said floor by the plaintiff in a manner different from the ordinary and customary usage of said floor in the ordinary course of conducting a business of the kind and character conducted by plaintiff.

"2.   In the event that you find for the plaintiff you are instructed that plaintiff is entitled to recover the difference between the reasonable value of a floor of the kind guaranteed by the defendant and the reasonable value of the floor constructed and delivered by the defendant, and in the event that you find from all the evidence that the floor so delivered by defendant was worth-

less and of no actual value whatsoever, then the plaintiff is entitled to recover the amount paid to the defendant for said floor, together with interest thereon from the date of the filing of this suit. And if you further find and believe from the evidence that at the time that plaintiff and defendant entered into the contract for the construction and delivery of said floor that defendant knew that plaintiff expected to make use of the basement and space directly beneath the said first floor for the purpose of his business and for the storage of materials necessary and proper for said business, and if you find and believe that any salt which plaintiff may have had stored in said space beneath said first floor for the purpose of his business was damaged or destroyed by reason of said leakage and said failure of said floor to be absolutely waterproof, then plaintiff is entitled to recover such a sum as the jury believe to be the reasonable value of such salt which may have been thereby destroyed or damaged in addition to the amount above stated."

The court amended an instruction asked by defendant and gave it in the following form:

"3. The court instructs the jury that it was the duty of the plaintiff to reduce the damages as much as possible, and if they find from the evidence that plaintiff could have prevented the loss caused by the wetting of the salt, then you will find only such damages upon this issue as the plaintiff was compelled to suffer after doing everything which he could to lessen or prevent such loss."       ·

Defendant contends that instruction No. 1, given for plaintiff, is erroneous in that it omitted to submit the question whether or no defendant had knowledge of the use to which the floor was to be put. There is no evidence that defendant made any inquiry as to the use to be made of the floor. There is evidence, however, that it knew the building was to be used as a place to manufacture ice cream and that plaintiff wanted a sanitary floor for that

purpose. No conclusions are to be drawn from all the evidence other than that defendant knew the purpose for which the building was being constructed, and also the use to which the floor was to be subjected. But whether this is so or not, the defense interposed by the answer was not that the floor was put to an improper use, or to one not contemplated by the parties to the contract, but that plaintiff was guilty of specific acts of negligence in the manner in which he used the floor in the prosecution of his business of manufacturing ice cream, and that it was plaintiff's fault that the floor leaked.

4. It is also contended that plaintiff's instruction on the measure of damages is erroneous, in submitting to the jury to find damages caused by the water leaking through the floor on plaintiff's salt in the basement, for the reason defendant did not know for what use the basement was to be put. Defendant knew the basement was under the floor and could not have supposed it was not to be used at all. There is no evidence that it was put to an improper, unreasonable or unusual use. The evidence shows the damage to the salt was the direct result of the breach of defendant's warranty, and we think the instruction on the measure of damages, considered in connection with No. 5 given of the court's own motion, properly and fairly presented the issues in respect to the damage to plaintiff's salt.

No error appearing in the record, the judgment is affirmed. All concur.