# NORTHRUP DAWSON & WALLACE LYON, Appellants, v. A. D. FLINTON, Respondent.

### Kansas City Court of Appeals, December 18, 1916.

1. **CONTRACTS: Sales: Stocks.** The plaintiffs who are New York stock brokers, sued to recover damages from the defendant, for the failure to sell certain shares of stock at a specified price. The plaintiffs represented to the defendant that $70 a share was the highest market price of the stock, while the plaintiffs were aware that the market price was nearly $80 per share. *Held*, that one desiring to rescind a contract is entitled to a reasonable time in which to investigate the facts in order to determine whether a recission should be made. And that time is, within certain limits, a question for the jury to determine. However, if the delay is so long that reasonable minds could not differ on the question, then the court can say as a matter of law that defendant did not rescind promptly.

2. **INSTRUCTIONS: Modification: Reduction of Damages.** When an instruction is modified so that the question of the plaintiff's damages are reduced, and the jury does not find in favor of the plaintiffs, they cannot complain of the modification.

3. **EVIDENCE: Objections and Exceptions.** Where a conversation is introduced in evidence, and no objection or exception is saved at the time, it cannot be regarded as reversible error.

4. **INSTRUCTIONS: Credibility of Witnesses.** An instruction as to the credibility of a witness, which omits the words "material facts" is erroneous, but where the only contradictory evidence in the case was upon material facts, the instruction should not be considered prejudicial, since it did not affect the merits of the case.

Appeal from Jackson Circuit Court.—*Hon. Frank G. Johnson,* Judge.

AFFIRMED.

*Sharp & Sharp* and *Ed. E. Aleshire* for appellants.

*Hadley, Cooper, Neel & Wright* for respondent.

TRIMBLE, J.—Plaintiffs, who are stock brokers in New York City, made a contract over the telephone and telegraph with defendant at Kansas City, whereby the latter agreed to sell certain shares of stock at a specified price. The defendant afterwards refused to perform, and plaintiffs brought this suit to recover damages for the breach.

The defense was that the contract was rescinded because it had been obtained through plaintiffs' fraudulent representations concerning the market price of the stock in New York. The finding of the jury was for defendant, and the plaintiffs have appealed.

There is evidence tending to show that the plaintiffs represented to defendant that $70 a share was the highest market price of the stock in New York, that no sales had been made for a higher price and that the stock was not worth more. The evidence also clearly tends to show that defendant wanted more and inquired particularly as to the market price and finally, relying on plaintiffs' representations, agreed to sell at that figure. The evidence also shows that the market price was in fact higher than that, being as high as $80 per share, or between $70 and $80, and that plaintiffs knew this fact as they dealt in said stock shortly before the representations were made to defendant.

Plaintiffs claim they were entitled to a peremptory instruction in their favor because defendant did not rescind promptly. There is no doubt but that in order to rescind a contract for fraud, one must do so promptly. [Lapp v. Ryan, 23 Mo. App. 436; Emery v. Baehmer Shoe Co., 167 Mo. App. 703.] But the one desiring to rescind is entitled to a reasonable time in which to investigate the facts in order to determine whether a rescission should be made. And that time is, within certain limits, a question for the jury to determine. Of course, if the delay is so long that reasonable minds could not differ on the question, then the court can say as a matter of law that defendant did not rescind promptly. [Woods v. Thompson, 114 Mo. App. 38; Enterprise Soap Works v. Sayers, 55 Mo. App. 15; Pierce Steam Heating

Co. v. Siegel Gas Fixture Co., 60 Mo. App. 148; Tower v. Pauley, 51 Mo. App. 75.]

However, we do not think it can be so said in this case. The stock in question was not listed on the stock exchange, and hence there was no record of sales, bids for, or deliveries thereof, which defendant could consult and determine for himself in a moment what the market price was. It seems that defendant's stock was held by the Mercantile Bank of Kansas City as collateral security. As soon as defendant agreed to sell the stock at $70 to plaintiff, he had the bank forward the stock to the Merchants National Bank of New York City with instructions to deliver the stock to plaintiffs on the payment of attached draft for the purchase price. This was done on the 16th of April. Afterwards, upon receipt of a telegram from a friend of his who was a broker in New York, defendant became suspicious of the representations made to him by plaintiffs and directed the Kansas City bank to telegraph the New York bank not to present the draft or stock to plaintiffs. This was done on the 18th. The stock arrived in New York on the 19th and the bank there, in accordance with its last instructions, did not present the same. Defendant proceeded at once, after having stopped the presentation of the stock to investigate the true market conditions and on April 24th, eight days after having made the contract, he wired plaintiffs, in answer to their telegram of inquiry, that he would not and could not deliver the stock. There being no record of prices on this stock, as it was not listed, we cannot say, as a matter of law, that the delay of eight days was an unreasonably long one for a seller in Kansas City to investigate curb market prices of such stock in New York. There is, however, evidence tending to show that on the 21st of April, two days after the time for the delivery of the stock in New York under plaintiffs' contract, the plaintiff knew of the rescission, and that defendant was not going to make delivery. Indeed, the facts are such as would entitle the jury to draw the inference that plaintiffs knew it before the 21st. The rule is that in determining whether the vendor has acted

in a reasonable time the conditions of each particular case must be considered. The evidence tends to show that as soon as defendant became suspicious of the representations made to him he ordered that the presentation of the draft be not made, and shortly thereafter wrote his friend, the other broker in New York, to notify plaintiffs. The record contains no evidence expressly stating that this broker notified plaintiffs, but there is evidence which shows that knowledge of defendant's refusal to deliver was conveyed to plaintiffs in some way and that they obtained this knowledge very shortly after defendant had, on account of his suspicious, stopped presentation of the draft.

Error is claimed in that the court modified plaintiffs' instruction No. 3 by striking out the words "seventy-five dollars ($75)." It is not shown in the record at what place these words appeared and we cannot tell but what it was proper to strike them out. But the instruction merely went to the amount of plaintiffs' damages and contained the provision that if the jury found defendant agreed to sell at $70 per share and then afterwards refused to sell, and plaintiffs were compelled to buy at an increased price other stock to take the place of the stock they had bought of defendant, then the jury should find for plaintiffs in such sum as the evidence showed plaintiffs to have been damaged. The striking out of the words "seventy-five dollars ($75)" could only have a tendency to *diminish* the amount of damages recoverable, while the retention of the words "seventy dollars" would entitle plaintiffs to some damages if the jury found for plaintiffs. But the jury did not find for plaintiffs ever for this lesser amount. Hence the modification, even if erroneous, is harmless error since the only effect of leaving in the words stricken out would have been to *increase* the amount of damages which the jury could have found if they had found for plaintiffs in any amount. As they did not find for plaintiffs at all, the plaintiffs cannot complain of the modification. [Feary v. Met. St. Ry., 162 Mo. 75, l. c. 98; Ogle v. Sidwell, 167 Mo. App. 292, l. c. 303.]

The court properly refused plaintiffs' instruction
No. 4, snce it told the jury without qualificaton that "de-
fendant cannot make the defense that plaintiffs misrep-
resented to him the market price of said stock on the
16th of April, 1913." This made it a peremptory instruc-
tion to find for plaintiffs when, as we have seen, it was
a question for the jury to say whether defendant re-
scinded promptly or not.

Error is claimed in the admission of evidence as to
a conversation defendant said he had with the cashier of
the Kansas City bank at the time defendant went there
to have the presentation of the draft stopped. There
was no evidence of what this conversation was except
that defendant was told to go and consult his attorney
first and then see the bank further about it. There was
nothing prejudicial in this. Defendant, in saying "it
looked to me that these people had misled me by not stat-
ing the proper market to me," was not relating a part
of the conversation but was merely telling what his sus-
picions were which caused him to go to the bank. No
objection was made to this evidence and no exception
was saved. It cannot be regarded as reversible error.

Defendant's instructions 1 and 2 are not comments
upon the evidence. Neither do they assume as true facts
which were for the jury to determine. Nor do they omit
any feature of the case necessary to be established in
order to find for defendant. They told the jury that be-
fore they could find for defendant they must find that
the representations as to price were made, that they were
untrue, that plaintiffs knew they were false, that defend-
ant relied upon them, and upon discovery of the fraud,
and because thereof, repudiated the sale. These instruc-
tions presented defendant's theory of the case, namely,
that as soon as defendant's suspicions were confirmed,
he rescinded the sale. Plaintiffs take the view that the
evidence clearly shows an unreasonable delay and that
there are no inferences to the contrary, hence they did
not submit to the jury, as a question of fact, whether
there was a delay, but asked the court to peremptorily
instruct the jury that because of an unreasonable delay

defendant could not rescind. But since there is evidence from which the jury could find that defendant rescinded without delay·and that plaintiffs knew, very shortly after the sale, that defendant was not going to deliver the stock, the defendant's instructions properly presented his theory of the case when they told the jury defendant had a right to rescind upon discovery of the fraud.

Defendant's instruction No. 5 was upon the credibility of the witnesses. The objection to this instruction is that it is not warranted by the facts in the case and is erroneous in that it omits the word "material." As to the first objection, the rule is that the propriety of giving an instruction on the credibility of witnesses must be left largely within the discretion of the trial court although, of course, there must be some basis for it. [State v. Hickman, 95 Mo. 322; McCormick v. City of Monroe, 64 Mo. App. 197.] In the case at bar the evidence amply justified the giving of an instruction on the credibility of the witnesses. Defendant's evidence as to the representations and as to their constituting a vital element or basis of the sale was sharply contradicted, and there was no other contradictory evidence in the record. And this evidence was so palpably contradictory in itself and gave rise to inferences so directly conflicting as to amply justify the trial court in giving a correct instruction on the credibility of witnesses. [Sampson v. St. Louis, etc., R. Co., 156 Mo. App. 419; Millar v. Madison Car Co., 130 Mo. 517, l. c. 525-6; McFadin v. Catron, 120 Mo. 252; Hall v. Manufacturers Coal & Coke Co., 260 Mo. 351, l. c. 364, 370; Seligman v. Rogers, 113 Mo. 642, l. c. 658.]

The other objection is more serious, namely, that the instruction is bad because in leaving out the word "material" it omits the qualification that the false testimony must be with regard to a material matter in issue in order to justify the jury in disregarding the whole evidence of a witness whose testimony is false in part. It has been frequently held, and correctly so, that an instruction which omits this feature is erroneous and constitutes reversible error. [White v. Lowenberg, 55 Mo.

App. 69; McCormack v. City of Monroe, 64 Mo. App. 202; Henry v. Wabash Western Railroad Co., 109 Mo. 488, l. c. 494; Lloyd v. Meservey, Pierce & German, 129 Mo. App. 636.] But in the case at bar, the instruction should not be considered prejudicial because *the only contradictory evidence in the case was upon material matters.* The only matters in dispute were whether representations as to market price were made and relied upon, and, if so, whether they were false; and the contradictory evidence did not relate to anything else. Hence there were no immaterial matters about which the jury could think a witness had testified falsely and thus be led to disregard his testimony on material things. The Supreme Court of Illinois in Butz v. Schwarts, 135 Ill. 180, l. c. 184, in passing on the point that an instruction is erroneous if it omits the qualification that the false testimony must be with regard to a material matter in issue, says:

"On examining the evidence, however, it is not perceived how this omission in these three instructions could have prejudiced the appellant, for it is apparent that all the supposed false testimony to which the instructions would be understood to refer, was upon material points. When this is so the error will not vitiate, even in capital cases, where life is at stake. [Dacey v. The People, 116 Ill. 555.]"

The Supreme Court of Alabama in Alabama Great Southern R. Co. v. Frazier, 93 Ala. 45, l. c. 51, says: "There is no evidence of either of these witnesses in this record which is not material to the issues presented. The charges must be construed with reference to the evidence with respect to which they are given. [Holland v. Tenn. Coal, Iron R. R. Co., 91 Ala. 444.] So construed, the supposed infirmity of the instructions, resulting from their failure to expressly base the right of the jury to disregard the testimony of these witnesses upon the willful false swearing in a 'material' particular, is eliminated. The particular referred to must have been a material one, since no immaterial evidence had been drawn from the witnesses in question."

195 M. A.—6

There being no testimony on immaterial matters, the instruction was not harmful. [38 Cyc. 1735.] Hence the instruction, as given, did not affect the merits of the case, and it should not be reversed on that account. [Sec. 2082, R. S. Mo. 1909; Sappington v. St. Joseph, etc. Co., 77 Mo. App. 270; Magrane v. St. Louis etc. R. Co., 183 Mo. 119; Harriford v. The City of Kansas, 103 Mo. 172; Berkson v. Kansas City, etc. R. Co., 144 Mo. 211; Swanson v. City of Sedalia, 89 Mo. App. 121, l. c. 128.] .

The judgment is affirmed. All concur.

## ON REHEARING.

JOHNSON, J.—We allowed a rehearing in this case thinking there was plausibility in the argument of counsel for plaintiffs that some immaterial matters had been made the subject of an evidentiary controversy between the parties, but a further examination and analysis of the evidence convinces us we were accurate in our statement that ''the only contradictory evidence in the case was upon material matters and, therefore the omission of the adjective 'material' from the instruction on the credibility of the witnesses should be regarded as a harmless error.'' The ultimate issue in the case was whether or not plaintiffs, who enjoyed superior advantages over defendant with reference to knowledge of the market value of the stock in New York falsely represented the value to be less than it was, intending that defendant should rely and act upon such representation and thereby inducing defendant to sell the stock at the represented value, which was $70 per share, when, in truth and in fact, as plaintiffs well knew, it was worth $5 per share more. The broker friend of defendant in New York testified to a conversation he had with one of the plaintiffs in which the latter offered him $75 per share for the stock, with knowledge that it belonged to defendant, and the evidence of defendant further tends to show that immediately after this conversation plaintiffs called defendant by telephone and made the false representations. This conversation is denied by plaintiffs and their coun-

sel suggest in the motion for a rehearing that the issue thus raised "did not necessarily go to the merits of the case." We think it did and that it was not only material to the main issue but was of the most vital importance.

In view of the vigorous attack in the motion upon the approval, in the foregoing opinion, of defendant's instruction No. 2, we think it not amiss to say that the hypothesis it submits has the support of substantial evidence and by no means should be regarded as subject to the criticism of being a comment on the evidence.

We readopt our former opinion and affirm the judgment. All concur.